## JOHN O. HALE *v.* GRAND TRUNK RAILROAD.

### *Railroad.  Mail.*

It is the duty of a railroad company, which carries the mail under a contract with
the government of the United States, and by whose regulations postal clerks
on mail trains are required to receive at the cars stamped letters and sell
stamps, to furnish a reasonably safe passage to and from its mail trains, while
stopping at its regular stations, for the purpose of mailing letters; and a
failure to provide such passage is actionable negligence.

Action on the case for negligence. Heard on an agreed
statement, June Term, 1887, Veazey, J., presiding. Judg-
ment *pro forma* for the plaintiff, and cause passed to the
Supreme Court under section 1390, R. L.

It was agreed: " On November 2, 1885, the defendants
were lessees and managers of said railway between Portland,
Maine, and Canada line, and had maintained a passenger
station at Berlin Falls, New Hampshire, about thirty years.

" The defendants carried the United States mail with route
or mail agents on their passenger trains between said Portland
and Canada line, according to the laws of the United States,
and pursuant to such conditions and regulations as the post-
office department had imposed; which may be referred to,
receiving therefor the compensation fixed by the department.

" The plaintiff, a traveling salesman, was at Berlin Falls the
evening of November 2, 1885, and went to the post office to
mail two letters. He there learned that the mail had gone to
the railway station, and he immediately went to the station
for the sole purpose of mailing the letters on the train. The
mail train from Portland to Canada line was due at that station
about six o'clock P. M. Plaintiff arrived at the station about
five minutes before the train came, and went into the station

and staid there till the train whistled, and then went outside on to the platform between the main track and side track, across which passengers are accustomed to go in getting off and on the cars. It was a dark and rainy night. As soon as the train stopped, plaintiff turned to the right and started to go to the car on said train which he thought was the mail car, but which was the express car, and was the next car forward of the mail car. In going towards said express car for the purpose of mailing said letters, the plaintiff walked off the platform near the corner, fell and got hurt. There was no railing or other guard, and he fell about 2 1-2 feet. From said corner, as far as the platform extended towards Canada, it was six feet wide. The station was lighted that evening the same as usual. For fifteen or twenty years persons have been accustomed to go to the mail car at this station to mail letters on the car, to which the defendants have made no objection; neither have they ever expressly consented thereto. The defendant's mail cars have letter boxes into which people can deposit letters through the car door.

"The plaintiff exercised due and proper care on this occasion.

"His right to recover depends upon whether or not the defendant is liable for the injury to plaintiff, occasioned by the lack of a railing or other guard on said platform, or in not properly lighting the same while it was being used by plaintiff as aforesaid."

*Geo. N. Dale*, for the defendant.

The defendant sustained no relation at all to the plaintiff. There was none by implication, by contract, and none created by law. The law simply provides that every route agent, postal clerk, etc., shall receive mail matter presented to him. This is a duty imposed on the agent of the government, and no place is specified at which he shall receive it; whether in the station, on the platform, or in the postal car. There is not a word in the statutes or post-office regulations about the

company having anything to do with the reception by, or delivery to, the postal clerk of this mail.

Section 4000 provides that the railway companies shall carry "all mailable matter directed to be carried thereon without extra charge." How does this relate to the public or any third party? The public is in no way, directly or indirectly, or by the slightest inference, referred to.

In this case the way required by the plaintiff to the mail car was as safe as to the approach to the oats in *Pierce* v. *Whitcomb*, 48 Vt. 127. In this case the defendant knew nothing about the plaintiff being on the platform. They had no business with him directly or indirectly. They had no connection with the business he was there to do; and now this plaintiff says they should furnish a safe passage to the *express car* so that he could go to the *mail car* to mail his letters. One who enters the premises of a railway company may not always be a trespasser. *Harty* v. *N. Y. Central R. R.* 42 N. Y. 468; *Patterson* v. *Philadelphia R. R. Co.* 4 Houston (Del.), 103; *Illinois R. R. Co.* v. *Hamener*, 72 Ill. 347.

But the company owes him no special duty because he had been permitted to be there. *Hounsell* v. *Smith*, 7 C. B. N. S. 731; Wood, Railway Law, 2d vol. 1270.

Admitting a person on the platform does not impose any obligation on the company to protect him. *Gillis* v. *Penn. R. R. Co.* 59 Penn. St. 129. Where no relation of business exists between the company and the injured party, there can be no recovery. *Nicholson* v. *The Erie R. R. Co.* 41 N. Y. 529. See *Johnson* v. *The Boston & Maine R. R. Co.* 125 Mass. 75; *Sweeney* v. *Old Colony and Newport R. R.* 10 Allen, 368; *Gaynor* v. *The Same*, 100 Mass. 208; *Coolbroth* v. *The Maine Central R. R. Co.* 165.

*Ossian Ray*, for the defendant.

The court will observe that plaintiff called upon none of defendant's employees for information touching the position of the mail car in the train, or in respect to the platform, and he

did nothing upon their invitation or suggestion. Defendant ought not to be held responsible for the result of plaintiff's blunder in departing from the usually travelled way or path, between the station and the cars, and going off in a wrong direction to the wrong car. There was no contractual relation between the parties. The plaintiff was not a passenger nor freighter. He was not at the station to meet a passenger, or to escort any one aboard the cars, or to transact any business. He was a mere licensee. *Railway Co.* v. *Bingham*, 29 Ohio St. 364; S. C. 23 Am. Rep. 751.

A licensee is a person who being neither a passenger, servant nor trespasser, and not standing in any contractual relation to the railway, is permitted by the railway to go upon its premises for his own interest, convenience or gratification. Patterson's Railway Accident Law, pp. 176-7, s. 185.

As MARTIN, B., said in *Balch* v. *Smith*, 7 H. & N. 736: "Permission involves leave and license, but it gives no right." A railway, like other owners of real estate, is not liable to licensees for injuries resulting from the condition of its premises, or caused by its failure to maintain those premises in repair, provided there be no such concealed danger as can be considered a trap for the unwary. *Senery* v. *Nickerson*, 120 Mass. 306; *Vanderbeck* v. *Hendry*, 34 N. J. L. 472; *Pierce* v. *Whitcomb*, 48 Vt. 127. But if the plaintiff was invited by defendant to go and put his letters into the post-office car, still the defendant is not responsible for his mistake in going out of the way to the wrong car. 1 Thompson, Neg. p. 308; 10 Allen, 385; *Murray* v. *McLean*, 57 Ill. 378; Campbell, Neg. s. 32; *Bennett* v. *Railroad Co.* 102 U. S. 577, 584; 1 Am. & Eng. R. R. Cas. 77; Whar. Neg. s. 349; Shearm. & Red. Neg. ss. 498-9; *Nicholson* v. *Railroad*, 41 N. Y. 525; *Victory* v. *Baker*, 57 N. Y. 366; *Railroad* v. *Schwindling*, 101 Penn. St. 258; 47 Am. Rep. 106; 8 Am. & Eng. R. R. Cas. 544; *Gillis* v. *Railroad*, 59 Penn. St. 129; *Railroad* v. *Martin*, 14 Neb. 295; 19 Am. & Eng. R. R. Cas. 236; *Frost* v. *Railroad*, 10 Allen, 387; *Lary* v. *Railroad*, 78 Ind. 323; 41 Am.

Rep. 572; *Railroad* v. *Thompson*, 77 Ala. 448; 54 Am. Rep. 72; *Hounsell* v. *Smyth*, 7 C. B. (N. S.) 731; *Gautret* v. *Egerton*, L. R. 2 C. P. 371; *Wilkinson* v. *Fairrie*, 1 Hurlst. and C. 633; *Sullivan* v. *Waters*, 14 Irish, C. L. R. 460.

*Bates & May*, for the plaintiff.

Did the company owe any duty to the plaintiff? The plaintiff contends that he had such business at the station that he was entitled to demand of the company a suitable platform, properly lighted, or if not, that he had an implied license to visit the station; in other words, that he was not a trespasser there. The defendant was then engaged as a common carrier. It had in its train a postal car, furnished with all appliances for taking, sorting and delivering the U. S. mail. Postal clerks accompanied the car, and were in the exclusive use of same. See U. S. Rev. Laws, s. 4000; Instructions to R. R. Postal Clerks, ss. 720, 762.

It was held in *Pearce* v. *Langfit*, 101 Penn. St. 507, that it was a good delivery of a letter to a letter carrier; and in *Casco Bank* v. *Shaw*, 10 Am. Rep. 67 (Me.), that depositing in a letter box was sufficient to charge an endorser of a note with notice of dishonor.

A railway company is bound to keep a safe platform, and to keep it properly lighted at night. Deering's Neg. s. 85; Whart. Neg. s. 653; *Mayhew* v. *Mining Co.* 76 Me. 100.

In the following cases the company has been held liable to a hackman who went to a station to drum for passengers: *Tobin* v. *Railroad Company*, 59 Me. 183; to a driver of job wagon who went for a chest over a wharf owned by defendants but not occupied by them: *Campbell* v. *Sugar Company*, 62 Me. 552; to a custom house officer whose duty it was to watch for smugglers: *Low* v. *G. T. R. Co.* 72 Me. 313; to the husband who went to meet his wife: *McKone* v. *Michigan C. R. R.* 51 Mich. 601; s. c. 47 Am. Rep. 596; to mail agents on train: *Holton* v. *West. N. Y. R. R.* 15 N. Y. 444; 95 N. Y. 562; s. c. 47 Am. R. 75; to express agents: *Blair* v.

*Erie R. R.* 66 N. Y. 313; to a person who went with an illiterate man to read a notice at station: *St. L. & L. M. R. R. Co.* v. *Fairbairn*, 23 Rep. 747 (Ark.)

But if the plaintiff was not a passenger, still he was rightfully at the station, and can maintain his action. Moak, Und. Torts, Rule 24; *Sweeney* v. *R. R. Co.* 10 Allen, 368; 99 Mass. 216; *Pierce* v. *Whitcomb*, 48 Vt. 127; *Snow* v. *R. R. Co.* 136 Mass. 552; s. c. 49 Am. Rep. 40; 72 Mass. 313; *Wendall* v. *Baxter*, 12 Gray, 494; *Stratton* v. *Staples*, 59 Me. 95; Moak, Und. Torts, p. 260; 129 Mass. 367.

The opinion of the court was delivered by

Ross, J. By the agreed case, November 2, 1885, the defendant was operating a railway from Portland, Maine, to Canada line, and had a station at Berlin Falls, New Hampshire. As such, it was carrying the mail on its mail trains for the United States government according to the laws of the United States, and pursuant to the conditions and regulations imposed by the post office department, at a fixed compensation. The plaintiff on that evening in attempting to go to its mail train while stopping at the station at Berlin Falls, for the purpose of mailing some letters, in the exercise of due and proper care, fell from an unguarded; and as he claims, insufficiently lighted platform, leading from the station to the train, and was injured. By the regulations of the post office department it was then the duty of postal clerks on trains carrying the mail to receive at the cars, among other things from the public, letters on which the postage had been prepaid, and there to sell stamps with which to prepay such postage. Sections 720, 762, Instructions to Railway Postal Clerks. Hence, as a part of the service which the defendant was performing for the government and for which it was receiving compensation from the government, it was under a duty to furnish the public a reasonably safe passage to and from its mail trains while stopping at its regular stations, for the purpose of purchasing stamps and mailing such letters. The plaintiff was a member

of the public and was attempting to pass over the platform provided by the defendant to the mail train for the lawful purpose of mailing two letters. By accepting the carriage of the mail for the government the defendant became under the duty to furnish him a reasonably safe passage to its mail train for the purpose of mailing his letters. In attempting to pass over the platform to its mail train for this purpose the plaintiff was neither a trespasser, intruder, nor loafer, but was there to transact business which the defendant had undertaken to do with him for a compensation received from the government,—in fact was there at the invitation of the defendant to transact business which it had been hired to perform for and with him, by the government. The duty of the defendant to furnish the plaintiff a reasonably safe passage to its mail train to mail his letters was none the less binding or obligatory because the compensation received therefor came from the government rather than the plaintiff. A holds a regular passenger ticket over a railroad. The duty of the company operating the road to carry him safely is none the less binding, nor are his legal rights, if injured, in the least abridged because the ticket was paid for by the money of B rather than with his own money. The government derives a large part of its revenue with which it pays for the mail service by the sale of postage stamps to whomsoever of the public may desire to use that arm of its service. The money which the plaintiff had paid for the postage stamps upon the letters he was carrying, or which he would have paid the postal clerk for stamps to use upon the letters, was indirectly a payment to the defendant for the service which it was about to perform for the plaintiff in carrying the letters which he was about to post on the way towards their destination. But whether the plaintiff paid indirectly to the defendant for the service and accommodation which it was under a duty to furnish him, or the government paid therefor and gave it to the plaintiff, does not vary the defendant's duty to furnish him a reasonably safe passage to the mail car for the purpose of mailing his letters, nor are his legal rights

thereby abated. Actionable negligence is failure in legal duty which occasions an injury to a party free from contributory negligence, or who has not failed in the discharge of his duty in the given circumstances. This is conceded by the counsel for the defendant. They have also conceded in the agreed case that the plaintiff exercised due and proper care on the occasion. They only contend that the defendant was under no legal duty to furnish the plaintiff a reasonably safe passage to the mail car for the purpose of mailing his letters, mainly because he was to pay the defendant nothing therefor directly. But, as we have already endeavored to show, that fact would not relieve the defendant from the duty, inasmuch as it was paid by the government for discharging that duty to the public; that is, to any person who had occasion to go to the mail car when stopping at regular stations to transact any lawful business with the servants of the government. These views would affirm the judgment of the County Court; but, in accordance with the stipulation of the parties, that judgment is reversed *pro forma* with costs to the plaintiff, and the cause remanded for trial.