(60 South. 1029.)

No. 19,275.

BELL v. HOUSTON & S. R. CO. et al.

(Jan. 20, 1913. Rehearing Denied Feb. 17, 1913.)

*(Syllabus by the Court.)*

1. RAILROADS (§ 274*)—OPERATION—CARE REQUIRED.

A person at a railroad depot for the purpose of mailing a letter on the mailing car is neither a trespasser nor a licensee; and the railroad owes to him the same obligation of safe passage to and from the train as it owes to a passenger. Hale v. Grand Trunk Railroad Co., 60 Vt. 605, 15 Atl. 300, 1 L. R. A. 187; Atchison, Topeka & Santa Fé Railway Co., Plaintiff in Error, v. Frank J. Jandera, Defendant in Error, 24 Okl. 106, 104 Pac. 339, 24 L. R. A. 535, 20 Ann. Cas. 316.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 868–872; Dec. Dig. § 274.*]

2. NEGLIGENCE (§ 32*)—CARE AS TO LICENSEES OR PERSONS INVITED.

"To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant." Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

3. RAILROADS (§ 274*)—OPERATION—INJURIES TO PERSONS ON PREMISES.

Where a railroad company prepares a strip of land upon which it discharges passengers in front of its depot, which strip of land has been used by the public for years as the proper approach to and the recognized way of departure from its cars, it is under obligation to one who has business to transact with or on the train of the company to use a reasonable degree of care to keep said strip of land in a safe condition.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 868–872; Dec. Dig. § 274.*]

4. RAILROADS (§ 274*)—OPERATION—INJURIES TO PERSONS ON PREMISES.

"Such invitation as imposes on the company the duty of ordinary care is implied, where by some act or designation of the company persons are led to believe that the way was intended to be used by travelers or others having lawful occasion to go that way; and the company is under obligation to use ordinary care to keep it free from danger." Elliott on Railroads, §§ 1154, 1248.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 868–872; Dec. Dig. § 274.*]

*(Additional Syllabus by Editorial Staff.)*

5. RAILROADS (§ 278*)—OPERATION—INJURIES TO PERSONS ON PREMISES — CONTRIBUTORY NEGLIGENCE.

One who went to a railroad depot to mail a letter on the mailing car did not contribute to an accident, which resulted to him, by using a dark and unlighted passageway in leaving the depot, where the only other way provided was by passing through the colored waiting room of the depot.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 891–900; Dec. Dig. § 278.*]

6. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

An award of $10,000 for the loss of a foot will be reduced to $7,500.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Monroe, J., dissenting.

Appeal from Twelfth Judicial District Court, Parish of De Soto; Don E. Sorelle, Judge.

Action by Paul G. R. Bell against the Houston & Shreveport Railroad Company and another. From a judgment for plaintiff, defendants appeal. Amended and affirmed.

Wise, Randolph & Rendall and A. B. Freyer, all of Shreveport, for appellants. Elam & Lee, of Mansfield, for appellee.

SOMMERVILLE, J. Plaintiff sues the Houston & Shreveport Railroad Company and the Houston, East & West Texas Railroad Company, in solido, for the sum of $15,500, with interest, as damages for personal injuries suffered by him through the fault of said defendants at their depot at Logansport, La. There was judgment in favor of plaintiff and against the defendants, in solido, in the sum of $10,000, with interest. Both defendants have appealed.

Petitioner alleges in his petition that he went to the depot of the defendant company for the purpose of mailing a letter on the train which was due at that time; that after mailing his letter upon said train he turned to walk over the route and passage provided by said company for passengers, and while walking forward he was either struck by some projection on the moving cars, or, in the constricted passage between the cars, he walked into some small projection on the standing cars; that he was hurled to the ground and under the moving cars, and had one of his legs broken and mangled below the knee by the train passing over it; that his leg had to be amputated at once, and that subsequent thereto an additional operation had to be performed on said leg; that the injury was caused by the tort, gross neglect, carelessness, and want of care of said railroad companies, their agents, servants, and employés.

Defendants filed an exception of no cause of action to the petition of plaintiff, which exception was overruled.

[1] Defendants argue, in support of the exception filed by them, that the petition does not allege or disclose any contractual relations between plaintiff and the defendants; that in going to the depot solely to mail a letter on one of their trains that he was engaged in the transaction of business other than that connected with the railroad company; that the contract of the railroad

company to carry mail is with the government, and that such contract confers absolutely no right on the sender or addressee of mail as against the railroad, and that it gives rise to no legal relations whatsoever between them; that plaintiff's business in mailing the letter referred to was with the United States government; that the only duty that the railroad company owed plaintiff was not to willfully or maliciously injure him; and that, as there was no allegation in plaintiff's petition of malice or willful injury on the part of defendants, his petition disclosed no cause of action.

A contract to carry mail is, of course, between the government of the United States and the carrier of the mail; and the sender or receiver of mail is not a nominal party to such contract. But the sender or receiver of mail is the person to be served or benefited under or by that contract, and he is therefore indirectly interested therein, or connected therewith. The sender of mail has the undoubted right to deposit letters in the places designated by the government for the reception of mailing matter; and, where the sender of mail goes to a mail car and deposits his mail with the clerk or officer placed in said car to receive mail, he is transacting business with the agent or agency employed and used by the government for the transmission of mail. In this instance, the defendants were the instrumentalities used by the government for conveying mail from one place to another; and they were obliged, under their contract with the government, not only to provide a mail car and carry the mail and mail clerks in charge of the mail, but also to give safe passage of ingress to and egress from their train and the mailing clerks stationed in the mail car.

[2] When defendants entered into the contract with the government to carry the mail for the public, they (the defendants) impliedly invited all persons having business connected with the government under that contract to come and transact such business with them, as they were the agencies of the government in the transaction of this particular line of business. They were engaged in the carrying of mail for the government; they permitted such business to be operated in their cars and on their tracks; and all persons depositing mail had the right to go to the mail car in which defendants carried the mail, and which was stationary and open to receive mail at their regular depot. There is a mutuality of interest between the sender of mail and the common carrier, who carries the mail under contract with the government. The Supreme Court of Massachusetts, in Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463, say, with reference to a mutuality of interest:

"To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant."

The question here presented has been passed upon directly twice in the courts of last resort of this country; and in both cases it was held that a person going to a depot to mail a letter is neither a trespasser nor a licensee, but that the railroad owes to him the same obligation of safe passage to and from the train as it owes to a passenger. In the case of Hale v. Grand Trunk R. R. Co., decided by the Supreme Court of Vermont and reported in 60 Vt. 605, 15 Atl. 300, 1 L. R. A. 187, the plaintiff was on his way to the train to mail a letter, and fell from an unguarded and insufficiently lighted platform. The defendants pleaded that the plaintiff was a mere licensee; but the court held:

"It is the duty of a railroad company to furnish a reasonably safe passage to and from

its mail cars, for the purpose of mailing letters, while stopping at its regular stations, when the company carries mail under contract with the government; and failure to provide such passage is actionable negligence."

In reply to the identical argument raised here, the court, in the body of its opinion, said:

"As a part of the service which the defendant was performing for the government, and for which it was receiving pay from the government, it was under a duty to furnish the public a reasonably safe passage to and from the mail trains, while stopping at its regular stations, for the purpose of purchasing stamps and mailing letters. The plaintiff was a member of the public, and was attempting to pass over the platform provided by the defendant to the mail train, for the lawful purpose of mailing two letters. By accepting the carriage of mail for the government, the defendant became under the duty to furnish him a reasonably safe passage to its mail train, for the purpose of mailing his letters. In attempting to pass over the platform to its main train for this purpose, the plaintiff was neither a trespasser, intruder, nor loafer, but was there to transact business which the defendant had undertaken to do with him for a compensation received from the government; in fact, was there at the invitation of the defendant to transact business which it had been hired to perform for and with him by the government. The duty of the defendant to furnish plaintiff a reasonably safe passage to its mail train to mail letters was none the less binding or obligatory because the compensation received therefor came from the government, rather than from the plaintiff."

In the case of Atchison, Topeka & Santa Fé Railway Company, Plaintiff in Error, v. Frank J. Jandera, decided by the Supreme Court of Oklahoma, and reported in 24 Okl. 106, 104 Pac. 339, 24 L. R. A. (N. S.) 535, 20 Ann. Cas. 316, the court refused to adopt the view urged by the railroad, but followed the opinion in the Hale Case, just cited, saying:

"It is urged by defendant that plaintiff, not being upon defendants' right of way by its invitation, express or implied, but for the purpose of mailing a letter, a matter of his convenience, was a trespasser, or at most a licensee, to whom defendant only owed the duty of not wantonly or willfully injuring him. * * * The test as to whether or not such invitation may be implied is said by Mr. Campbell, in his work on Negligence, to be: 'The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the matter is the mere pleasure or benefit of the person using it.' It is useless to multiply authorities in support of this rule, since the same has been quoted approvingly by this court. [Authorities.] Applying these principles to the case at bar, it will be seen that the defendant was under contract with the government to transport the mail on this particular train; that it was doing so according to the laws of the United States; that it had a mail car attached to its train with a mail agent or postal clerk in charge, and handled the same pursuant to rules and regulations imposed by the Post Office Department, of which we will take judicial notice (Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415); that under instructions from said Department it is the duty of said clerk to receive any mail presented to him, if properly prepaid by stamps, on said mail car at stations along its route, when offered by any member of the public; * * * that plaintiff, at the same time he was making his way to defendants' platform over a recognized way of approach from B street, for the purpose of making an offer of mailable matter to said clerk, and thereby transact business with the defendant, when its train should arrive, tendered to it, in the shape of stamps on his letter, indirect payment for the service of transportation which he was about to ask it to perform, and which it had no right to refuse. In thus attempting to pass from B street to the platform, and onto the mail car, when it should arrive, plaintiff was neither a trespasser nor licensee, but was there by the implied invitation of defendant to transact business which defendant had undertaken to do for him, for compensation to be paid by the government. Under the circumstances, defendant owed him the duty to exercise reasonable care to provide a reasonably safe passageway from B street to its platform and mail car; and its failure to do so was actionable negligence."

The cases of J., M. & I. R. R. v. Riley, 39 Ind. 568, and Snow v. F. R. R., 136 Mass. 552, 49 Am. Rep. 40, employ the same principles in rendering judgments against railroad companies for damages resulting from the throwing of mail bags from a train by the postal agent.

The exception of no cause of action was properly overruled.

Plaintiff is 50 years of age, with a family consisting of a wife and three children. He was engaged in fire insurance and real estate business at the time of the accident.

The evidence shows that plaintiff went to the depot, as we have seen, for the purpose of mailing a letter on a train of the defendant company, which was due about the time of his arrival there; that on hearing the whistle of the approaching train he went to the front part of the depot, where the night clerk of the defendant company took the letter from plaintiff, for the purpose of mailing it; that the train arrived almost immediately thereafter; that the engine took water, passengers were discharged and received, and the train proceeded on its way to Shreveport; that directly after the train started the plaintiff, walking in the same direction as the moving train, proceeded to go in the direction of his office; that it was about 10 o'clock at night; that the way was dark; that there were no lights provided by these defendants, and plaintiff fell or was thrown under the moving train; that he managed to roll his body from under the car, but his leg was caught by a wheel, and his foot was cut off just above the ankle.

[5] Defendants urge that plaintiff contributed towards the accident by using a dark and unlighted passageway in leaving the depot and walking between the moving train and the freight cars stationed on the house track, which track was next to the depot; and that the injuries suffered by him were not due to any fault or negligence on their part.

The plat of the scene of the accident now under consideration shows that the depot consists of a long freightroom, with an elevated platform in front of and at the left-hand end of same. To the right of the freightroom, and on a straight line, are several waiting rooms marked: "Baggage Express Room," "Colored Waiting Room," "Agent's Office," and "White Waiting Room." Immediately in front of and adjoining the depot, a house track is located, upon which freight cars are operated. This places the freight cars in close proximity to the freightroom. There is a second track running almost parallel with the house track, which is the main track, and upon which passenger trains are operated. The house track runs into the main track a short distance to the left end of the depot.

It was upon this main track that plaintiff was injured. There is another track beyond the passenger track; but it will not enter into the discussion of this case.

The foregoing statement shows the defendant companies to be at great and serious fault in placing the house track between the depot and the main, or passenger, track. It is shown that passengers going to and from the passenger trains cross over the house track. This is a perilous situation for the defendants to place the traveling public and others in. It is not a sufficient answer to show that these tracks have been thus located for some twenty-five years, and that there has been no accident to persons going to and from Logansport on defendants' line of travel.

The faulty placing of the track just referred to is intensified by the close proximity of it to the main track, and the converging lines of the two in the immediate vicinity of the depot.

At the point where Captain Bell was injured, the distance between the centers of the two tracks is about 12 feet 5 or 6 inches. The width of a car is from 10 feet to 10 feet 2 inches, which would leave the clearance between cars to be 2 feet 3 inches, or 2 feet 5 inches—not more than 30 inches. If the ladder and doors on the side of the freight cars, say about 2 inches, were deducted, there would be a clearance of about 28 inches. The evidence shows that the defendant companies are in the habit of receiving and discharging passengers in this very narrow space, in utter disregard of the comfort and safety of the patrons of the road; and it amounts to great negligence and fault

on the part of the defendants if persons having business to transact with them are injured. Indeed, the only provision made for persons having business with the passenger train is a cinder pathway between the house and main tracks. No lights are provided at night; and there are no warnings of any kind to those who find themselves entrapped in this snare.

On the night, about 10 o'clock, when plaintiff was injured by the passenger train running over his ankle, three freight cars, or flat cars, were stationed on the house track. Between the cars on the two tracks was, as we have seen, a clearance of some 28 or 30 inches. The night was dark; there were no lights; and no employé of the defendant companies was near plaintiff when the accident happened.

Defendants argue that plaintiff contributed to the accident by his failure to leave the depot immediately upon delivering his letter to the night clerk, and by not taking another route from the depot, and by selecting this dark and perilous way between the house and the main tracks, and by walking on the cinder path when there was a moving train on the main track.

We have seen that plaintiff went to the depot for the purpose of mailing a letter. He went to the front of the depot after hearing the whistle of the train blow for Logansport; and after delivering his letter to the night clerk he started to leave about the same time that the train left the depot. There was no such unnecessary delay on his part as to denominate or constitute him a loiterer. He had come on business, and was returning within a reasonable time. Defendants owed to him all due diligence in protecting him from injury. That plaintiff might have taken another road or way to his office is true. But it is also true that the only way indicated by defendants, and which they invited him to take, was the cinder path, which they had prepared for those having business with them. Defendants' witnesses testified that plaintiff might have gone through the colored waiting room, then through the office, and by diagonal tracks across private property, have reached a sidewalk leading to his office. But it cannot be assumed that defendants prepared a way for white people to go through a waiting room reserved for the use of colored persons. The sign, if any, on the door of the colored waiting room was not an invitation to plaintiff to use that room for any purpose whatever. If going through the colored waiting room was the only other way prepared by defendants for persons having business with them after 10 o'clock at night to leave the depot, then the only way from defendants' depot was the way selected by the plaintiff.

And if defendants made this one way extremely hazardous by making it too narrow for safety, too dark to be used, and flanked by freight cars, which prevented escape in the event of accident, they are responsible in damages for the accident to plaintiff.

[3] Plaintiff is one of the public, and he was attempting to leave the depot after having performed the lawful purpose of mailing a letter on defendants' train. The defendants were required to furnish him a reasonably safe passage to and from its mail train, for the purpose of mailing his letter. Plaintiff was therefore not a trespasser, intruder, or loafer, but was present to transact business which the defendant had undertaken to do with him, for a compensation received from the government; in fact, was there at the invitation of the defendant to transact business which it had been hired by the government to perform for and with him. And a safe passage was none the less obligatory because the compensation received therefor came from the government, rather than from the plaintiff. It cannot avail defendants to contend that the invitation thus extended plaintiff to transact business with them did

132 LA.—4

not invite him to approach or leave its train over the cinder path or way above referred to, for the further reason that the evidence discloses that defendants had held out said strip of land to the public for years as the proper approach to and the recognized way of departure from their cars; and they were under obligations to plaintiff, as one of the public, lawfully on its premises, to use a reasonable degree of care to keep said strip of land in a safe condition for his protection, and for the protection of all persons who might lawfully pass over it on their way to transact business with the defendant.

[4] "Such invitation as imposes on the company the duty of ordinary care is implied, where by some act or designation of the company persons are led to believe that a way was intended to be used by travelers or others having lawful occasion to go that way; and the company is under obligation to use ordinary care to keep it free from danger." Elliott on Railroads, §§ 1154, 1248; Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463.

Plaintiff and others testified to the regular use of the cinder path by the public having business with the trains of the defendants. Plaintiff testifies that he himself had used this path quite often; and the witnesses for defendant agree with the witnesses for the plaintiff in this respect, except they say that passengers use this strip while traveling in one direction, and not in the other direction.

Plaintiff is the only witness as to how the accident happened. He testifies that he came into contact with the freight car on the house track, or some projection therefrom, and that he was thrown, or stumbled and fell, under the moving train, when his foot was cut off. The evidence further shows that the plaintiff suffered great agony, not only at the time of the accident, but subsequently. An amputation of the foot became necessary at once. A physician was called, and in the great hurry, and under the circumstances, the proper appliances were not had, and a second minor operation be-

came necessary. He was confined to his bed for about three months, during which time he suffered much. In addition to this, he has lost his business, which was the only means of supporting himself and family; and he is not in a position to resume that business.

Our conclusions are that the accident to plaintiff was attributable to the gross negligence of defendants, and that plaintiff did not contribute in any manner thereto; that if plaintiff stumbled and fell, and thus brought about the accident, defendants are liable, for they caused him to be placed in such position as to make it impossible for him to extricate himself from danger.

[6] Upon the quantum of damages, we observe that we have recently held in one case that a plaintiff was entitled to $7,500 for the loss of a foot, and in another case $7,500 for the loss of a hand. For the reasons given in those cases, we are of the opinion that the judgment herein is excessive, and it will be reduced to $7,500.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the same from $10,000 to $7,500, and, as thus amended, it be affirmed. Costs of appeal to be paid by the appellee.

MONROE, J., dissenting.