PROVOSTY, J.
The logs for the sawmill of the defendant company are brought in on railroad cars and dumped into a pond. The cars incline towards the pond by reason of the outer rail being higher; so that the logs tumble by specific gravity when the chains which bind them on the cars are loosed. They drop upon a skidway, and slide or roll into the water. The pond is 250 feet by 150; and the skidway extends nearly its entire length. The space between the ears and the water occupied by the skidway is about 12 feet. Usually the logs float away, but one or more will sometimes go to the bottom on leaving the skidway, and then the ones that follow pile on top. When this occurs, they are set adrift or pulled away by a wire rope being hooked to them one at a time and attached to the locomotive. Two brakemen attend to the unloading, except when this piling up occurs, and then the brakemen call to *485 their aid the pondmen, those who attend to distributing the logs in the pond and feeding them to the log carrier. This is practically of everyday occurrence; in fact, occurs not unfrequently several times a day.
On one of these occasions the plaintiff, MIley, one of the pondmen, was called by Bannister, the head brakeman, to come and help, and, in responding to the call, passed not between the log train and the pond, but on the other side round the head of the train, and went to the back end of the rear car where Bannister was. He says that as he came the other brakeman, Cammack, was standing on that same far side of the train, at the front end of the rear ear, holding in his hand a cant hook, a sort of lever used for rolling logs with. Cammack contradicts him in that statement. He was, he says, on the pond side of the train. Plaintiff took one end of the wire rope to go and attach it to one of the piled up logs, and Bannister took the other end to attach it to the locomotive. Bieantime Cammack had ascended the car and was going on with his work of unloading by rolling off from the car with his cant hook some of those logs that had not dropped off' when the chains had been undone. When these logs came tumbling down, plaintiff was on the skidway, on his way to hook the rope to one of the piled logs, or else returning after having done so. The evidence is contradictory on this point. He succeeded in avoiding one of the tumbling logs, but another caught him, and caused the injury for which he brings this suit in damages. He explains, and seeks to justify, his having thus gone upon the skidway without looking to see whether logs were not being rolled down, by saying that Bannister told him they were not going to unload any more logs. Cammack had his back turned in his direction, and, of course, did not see him, and was not aware of his being there.
Plaintiff says he could have saved himself if the spaces between the skids had not been filled up with debris, and he charges this condition of the skidway as negligence on the part of defendant. The skids consist of rows of piling running from the railroad track to the water, each row topped by a sleeper upon which is laid an iron rail, sloping towards the pond. They are 8 feet apart, and at their higher end only about 3 feet from the ground. Had the spaces between them been intended to serve as a means of escape for workmen who might find themselves in the pathway of tumbling logs, the allowing them to become filled up in this manner would clearly have been actionable negligence on the part of defendant; but these spaces were there merely as the result of the skids having been constructed, and no one, not the most prudent man, would ever have stopped to think that the life of the workmen would be endangered by allowing these spaces to become filled up. Allowing this condition to come about was therefore not negligence.
Plaintiff’s next contention is'that Bannister was in charge of this work, and was a vice principal, and should have seen to his safety. But Bannister says that the work was that of the pondmen, and, referring to plaintiff:
“I had no authority over him. It went the other way, so far as I was concerned.”
This is conclusive upon plaintiff: First, because not contradicted; and, secondly, because the witness was plaintiff’s witness.
Plaintiff would also make defendant responsible for the logs having been rolled down. Suffice it to say, in that connection, that if Cammack was at fault in not looking to see whether plaintiff or somebody else was not in the way, plaintiff was equally, if not more, at fault in putting himself in the way without looking to see whether logs were not being let down. We may add that we are not satisfied Cammack was at fault. The *487 work in hand was the unloading of the cars by dumping the logs upon the skidway, letting those fall off that would, and rolling off the others; and this last is what Cammack did. Nothing shows that he knew that plaintiff was going upon the skidway, unless the statement of plaintiff is to be accepted that Bannister told him, “in the presence and hearing of Cammack, that no logs would be rolled until he [plaintiff] had come out.” Bannister testified that he said nothing to plaintiff when the latter arrived, but that he simply took one end of the wire rope and went towards the locomotive, while plaintiff took the other end and went towards the pond. And Cammack did not hear Bannister say anything.
Judgment set aside, and suit dismissed at cost of plaintiff in both courts.