AYRES, Judge.
This is an action in tort wherein plaintiff, Emitt Gosey, seeks to recover damages for pain and suffering in the sum of $2500.00, loss of earnings, $891.45, and hospital and medical expenses, $441.50, or a total of $3832.95, as the result of an accident allegedly occurring in June, 1956, while he was engaged in the loading of pulpwood from a truck to a railroad car of defendant on its tracks at Zwolle, Louisiana, when a train crew of the defendant, without giving any warning or notice of their intention to do so and unknown to plaintiff, by means of a flying switch, switched, “shunted” or "dropped” another railroad car on said track and against the car then being loaded with such great force and impact as to throw plaintiff backward off the railroad car and on his back to the truck, with a stick of pulpwood falling and striking him in the abdomen.
As a result of said accident, plaintiff avers he immediately became sick, suffered pain in his stomach and groin, temporarily ceased work and sat down until a fellow employee completed the task of unloading the truck; that in said accident he sustained a left indirect inguinal hernia and injury to his back. Immediately following the aforesaid accident, plaintiff accompanied the truck driver to the woods for another load, in which he assisted by loading only the smaller sticks. Thereafter he continued to work for some eight to ten days, during which time he complained of pain, and on June 29, 1956, called upon Dr. Norman U. Booker, of Many, Louisiana, who, on examination, found him suffering with a hernia. Plaintiff thereafter, on July 3, 1956, submitted to an operation for surgical repair of the hernia, was hospitalized for a period of 13 days, and discharged and pronounced able to return to work September 10, 1956.
At the time of the alleged accident plaintiff was employed by one S. H. Cade, a pulpwood contractor, to haul and load pulpwood on railroad cars for shipment. On account of his injuries and resultant disabilities, plaintiff was paid compensation in the sum of $330.00, that is, for eleven weeks at $30.00 per week, and medical and hospital expenses in the sum of $421.50 by his employer’s compensation insurer, Old Republic Insurance Company, which joins plaintiff in this action and seeks reimbursement of its aforesaid expenditures for compensation and medical expenses paid to and on behalf of plaintiff.
Defendant denied (1) that an accident occurred, and (2) alternatively, if an accident did occur, that plaintiff’s hernia was caused thereby; (3) and contends further that plaintiff was guilty of contributory negligence, and (4) that plaintiff, by working on and about defendant’s railroad cars in its railroad yard, assumed the risk involved during normal switching operations.
The trial court concluded from the evidence that an “incident” or accident, as alleged by plaintiff, did occur but that, from a lack of a preponderance of evidence, plaintiff failed to establish causal connection or relationship between the “incident” or accident and the injuries of which he complained. Accordingly, plaintiff’s demands were rejected, and he has appealed.
For a determination of the issues in this cause, questions of fact are primarily presented for consideration. The evidence sustains His Honor’s conclusions that an accident did occur as claimed by plaintiff. The foreman, James Wedgeworth, arrived at the scene soon after the train departed. He found plaintiff sitting down. The accident was reported to him at that tirqe— *313 plaintiff exclaimed: “They liked to got me awhile ago.” Wedgeworth gave little consideration at the time to plaintiff’s complaint of injury. Nevertheless, from this testimony the court concluded an “incident” or accident occurred.
There were, however, only two known witnesses to the accident, plaintiff and a fellow employee, John D. Farrell. Their testimony is that the truck was driven alongside the railroad car for unloading. The railroad car has all the appearance of an open flatcar, that is, one without sides or top but with ends approximately eight feet high. The pulpwood, having a length of approximately four feet, is loaded on these cars in two rows, one on each side extending from one end of the car to the other. On the occasion of this accident, Farrell was on the truck with one foot possibly on the bed of the car, unloading the wood from the truck onto the car by use of a hook. Plaintiff was standing on the railroad car, reaching the wood with his hook and lifting it with his hands and “topping” the layer of wood on the opposite side of the car from the parked truck.
According to the testimony of both witnesses, the accident was caused by the switching of a car into and against the one being loaded. Discrepancies appearing in their testimony as to whether the car being switched directly struck the car being loaded or a string or line of two or three cars, causing the forward one of which to strike the car on which they were working, are immaterial since the important fact about which there was no conflict in their testimony is that the switching of the car constituted the proximate cause of the accident.
Questioned as to the manner in which the accident occurred, plaintiff testified:
“A. Well, we pulled up there, backed up there unloading the truck on the car; John D. was on the front and I was on the back; standing on the car, pulling wood off, crossing it over, and I had a big stick in my hand and I just went to throw it up and they made that switch in there and hit those cars and knocked me over back.
“Q. Knocked you over backwards?
“A. Yes, sir; and the stick of wood fell in my stomach and John D. Farrell pulled it up off of me.” (Emphasis supplied.)
Farrell described the maneuver of the switching of the cars as a “flying switch” —“they throwed in there”; that the car was uncoupled from the train — “they just throw the cars in; the train don’t be onto the car they throwing. It just throws it in and it hits the other cars.”
Testifying as to what happened to plaintiff when the railroad cars collided, Farrell stated:
“Q. And what do you say happened to Emmet Gosey ? A. Well, it throw-ed him across the wood, and I taken my hook and raised the stick of wood up off him. He had a stick of wood in his hand and was fixing to throw it, when it hit.
“Q.- Did he fall on his back, or did he fall on his face ? A. He fell on his back.
“Q. Fell on his back? A. Yes, sir.
“Q. Where did the stick of wood fall? A. It fell across him, right across here (indicating). Some of it on his stomach, and some on his side; just fell across him.” (Emphasis supplied.)
Estimates of the weight of the stick of wood which struck plaintiff vary from 30 pounds upward to as much as 75 pounds or more.
Immediately on the occurrence of the accident, plaintiff complained of being injured, and while with Farrell on a trip for another load of wood, Farrell says plaintiff *314 continued to complain and held his hand to his side, whereupon he admonished plaintiff in this language to go to a doctor: “Well, I’d just go ahead and go to the doctor.” Plaintiff says that during the eight or ten days following the accident, he continued with his work but did only about half that which he had formerly done, and, on June 29, 1956, reported to Dr. Booker for examination and treatment, when the Doctor found him with the hernia.
On the occasion of this visit, plaintiff reported the occurrence of the accident and the manner in which it happened to the Doctor. A report of the accident was made to defendant’s station agent by a Mr. Wedgeworth, another fellow employee and father of the employer’s foreman. In this report it was stated the accident occurred June 18, 1956. Prior to this occasion, plaintiff had not been so afflicted. There is no showing that he knew, prior to being informed by his doctor, that he had a hernia. No contention or showing is made that plaintiff sustained the hernia in any other manner than that claimed by him, other than defendant speculates that the hernia may have occurred during the eight or ten days that plaintiff continued to work following the accident. There is no proof to support this contention. There is no evidence of any other accident occurring in the meantime.
Notwithstanding the confusion arising as to plaintiff’s inability to establish the exact date of the accident more definitely than the middle of June, 1956, the railroad train crews who testified disclaimed any knowledge of the occurrence of an accident, particularly on either June 14 or the 18th, the dates used in reporting the accident to the compensation insurer and to the railroad company. Nevertheless, from the facts to which we have referred and which corroborate plaintiff’s version of the matter, it could only be concluded that plaintiff had established by a preponderance of the evidence that an accident occurred in which he sustained injuries.
The defendant earnestly contends, however, that plaintiff has not established any causal connection between his injuries and the aforesaid accident. The trial judge was of the opinion that the testimony of plaintiff and Farrell, due to its inconsistencies, was unworthy of belief. The conflict in testimony pertains to minor details, concerning which it is not unusual for differences to arise, particularly where witnesses such as these are concerned, who were common laborers without much education and who obviously were not too concerned or impressed with details beyond the actual occurrence of the accident. Therefore, it is a matter of no great importance whether the car switched directly struck the car upon which the witnesses were working or whether it struck other cars which were set in motion and which in turn struck the car being loaded. Nor is it a matter of importance that plaintiff did not see the car switched before the force of the impact struck, as, from his personal experience with the impact of the collision, his personal knowledge of the occurrence was not made the less obscure by his failure to see.
We have already referred to the evidence concerning the occurrence of the accident, the complaints made by plaintiff, as well as his actions immediately following the accident, and the continuation of his complaints until he sought the services of Dr. Booker, as well as the reports of the accident to defendant’s agent. It is, therefore, unnecessary to again detail these facts in considering the question of causal relationship between the accident and injuries allegedly sustained. However, at the risk of repetition, we point up the testimony of plaintiff and of his fellow employee as to the exact manner in which the accident occurred. Plaintiff testified:
“/ was on the back, standing on the car, pulling wood off, crossing it over, and I had a big stick in my hand and I just went to throw it up and they made that switch in there and hit those cars and knocked nie over back.” Emphasis supplied.)
*315 In this he is corroborated by Farrell, who, as heretofore quoted, stated:
“He (referring to plaintiff) liad a stick of wood in his hand and was fixing to throw it when it (the railroad car) hit.” (Emphasis supplied.)
That the blow from the stick of pulpwood produced a hernia is discounted by Dr. Booker, who testified for plaintiff, and Dr. Eddy, who testified for defendant. It was, however, the consensus of opinion of both that the lifting of the wood could have produced sufficient strain to precipitate the occurrence of the hernia. In this connection, Dr. Booker testified:
“Q. Doctor, one thing you said interested me. You said that an accident of the nature of which he gave you a history could possibly cause a hernia such as you found on this man. If I tell you, hypothetically, that the man, in addition to falling when this flatcar was struck by this other freight car, had a stick of heavy pulpwood in his arms and that this pulpwood fell across his abdomen, would that increase the likelihood of such an accident causing a hernia? A. Well, I think actually having the pulpwood in his hand and having to lift on it harder than he would if he hadn’t been on the flatcar, he could have possibly caused enough strain to precipitate this thing.
“Q. In other words, you think that the added weight that he was handling would probably have more effect than the — A. I think that the increase in his intra-abdominal pressure by pulling up on something unexpected would have more bearing on it than possibly a direct blow, if he had such.”
Dr. Eddy described a typical indirect inguinal hernia as arising from a congenital defect caused by gradual wearing thin of the abdominal muscles and weakening in the anterior abdominal wall from age. As stated, he discounted that a blow such as received by plaintiff could have produced such a hernia. The Doctor was of the opinion, however, that strain from lifting heavy loads such as pulpwood could precipitate a hernia by the force of the strain from within. It only stands to reason that if the abdominal walls and inguinal rings are congenitally weak or become weakened from age or obesity, a less strain would be required to precipitate a hernia.
No serious question could arise as to the fact that plaintiff was under a strain in lifting the wood to the top of the stack and loading it on the car, particularly, while unaware and in the act of lifting the wood, the car was suddenly struck with a force sufficient to knock him down and throw him backward off the car onto the truck. This act was, in our opinion, sufficient to and, as we conclude from the evidence, did produce the injuries from which plaintiff continued to complain and suffer until he sought the services of Dr. Booker, who diagnosed his injury as a hernia. There is no evidence intimating plaintiff knew or suspected he had a hernia until informed by his doctor.
It could hardly be contended that the making of a “flying” switch, as was done in this instance, did not constitute negligence on the part of defendant’s employees. It was held by this court in Townsend v. Missouri Pacific Railroad Co., 3 La.App. 598, and in Reid v. Missouri Pacific Railroad Co., 3 La.App. 608, that the making of a “flying” or “running” switch is particularly dangerous under any circumstances and is negligence on the part of railroad companies which permit such practice. The method of switching known as making a “running” or “flying” switch, which embraces “kicking” cars, consists in detaching the portion of the train to be switched while the cars are in motion, the fore part of the train advancing with increased speed, while the rear portion, proceeding more slowly, is, at the proper time, switched to the desired tract, or the engine may push forward a car or *316 part of a train with considerable speed and then, giving it a strong propulsion, send it off alone on the desired switch. This practice, in many courts, is condemned as negligence. Lacey v. Louisville & Nashville Railroad Co., 5 Cir., 152 F. 134, 137. Defendant apparently concedes as much in view of its plea of contributory negligence, which, in our opinion, is without merit.
Plaintiff was, at least, an invitee of defendant. The car which he was engaged in loading was placed on the track for that purpose under a contract, or an agreement, between his employer and defendant. Such contract necessarily included, at least by implication, the consent that laborers enter defendant’s railroad yards and its car or cars for the purpose of loading materials to be shipped. An invitee is a person who goes on the premises of another in answer to an expressed or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage (65 C.J.S. Negligence § 43(1), p. 508), and the owner, occupant or person in charge of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety commensurate with the particular circumstances involved, and is liable for injury resulting from breach of' such duty, although no element of lawlessness or wantonness enters into the act of omission complained of. 65 C.J.S. Negligence § 45, p. 521.
The evidence in the instant case shows that defendant’s employees ordinarily and customarily warned the pulpwood loading crews of their intention to switch the railroad cars on the tracks in which the laborers were engaged. Only on one occasion, a month or two prior to this occasion, was there a failure to give notice or warning of such an intention. On this particular occasion, no notice or warning whatsoever was given. That plaintiff knew of the presence of defendant’s engine at the yard was not sufficient to constitute warning or notice of any intention to do switching on this particular track inasmuch as the railroad yard consists of a main line and three other tracks.
In Bell v. Houston & S. R. Co., 132 La. 88, 60 So. 1029, 43 L.R.A.,N.S., 740, it was held that a person at a railroad depot for the purpose of mailing a letter on the mailing car is neither a trespasser nor a licensee and that the railroad owed to him the same obligation of safe passage to and from the train as it does to a passenger, which is the highest degree of care, and for the omission of which it would be liable for the slightest negligence. Baker v. Shreveport Railways Co., La.App., 68 So.2d 228; Coleman v. Shreveport Railways Co., La.App., 86 So.2d 590; Peters v. City of Monroe, La.App., 91 So.2d 428.
No less degree of care should be required as to those who are engaged in loading merchandise and materials for shipment on railroad cars provided for by contract between the railroad and the shipper and placed for such loading, as they are engaged in work for the mutual advantage of the transportation company as well as the shipper.
Defendant’s trainmen testified as witnesses that it was not only their practice but their duty to warn loaders of the train crew’s intention to do switching upon the tracks on which the laborers were engaged' in work. By making the slightest observation, the crew could have and would have seen plaintiff and his coemployee loading this railroad car. There could be no question but that they could have seen the loaded pulpwood truck parked alongside the car, with a man standing thereon, had they looked. No showing of any facts has been made that would, in the least, indicate contributory negligence upon the part of plaintiff. There was no reason for him to expect switching to be done upon the track where he was performing his labor, without notice or warning to that effect.
Defendant’s plea that plaintiff assumed the risk involved in normal switch *317 ing operations through the loading of this car situated within defendant’s freight yard is equally without merit. No authorities are cited that would support such a proposition. We know of none and, moreover, to so hold would be in direct conflict with the authorities which we have cited and quoted as to the duty and responsibility of a railroad company to those engaged in services in which the company has a mutual interest.
We hold, therefore, that defendant should respond in damages to plaintiff for the injuries sustained, for the pain and suffering undergone, for the loss of wages incurred, and for the expenses of hospital and medical treatment.
Lastly, for consideration is the matter of quantum. The proof establishes there was an expenditure of $421.50 for hospital and medical treatment; that plaintiff sustained loss of wages from June 29 to September 10, 1956, or for a period of ten and one-half weeks, at the rate of $65.00 per week as the minimum of plaintiff’s average weekly earnings, as testified by him and the foreman, Wedgeworth, which item aggregates $682.50.
In support of his claim for pain and suffering plaintiff cites Huskey v. Maryland Casualty Co., La.App., 53 So.2d 174, wherein $2500.00 was allowed for personal injuries sustained in an automobile accident, consisting of a hernia, and for pain, suffering, shock and mental anguish. In the instant case the record establishes that plaintiff suffered some pain immediately following the accident as well as discomfort, and that he continued to suffer pain and discomfort during the eight or ten days that he worked and until he submitted to surgical repair of the hernia July 3, 1956, due to which he was hospitalized for a period of 13 days. Following the accident, plaintiff continued to suffer some pain and discomfort, such as is usually experienced during a post-operative period, until at least September 10, 1956, when he was pronounced able to return to work. We do not think, however, that the injuries and pain and suffering in the instant case were as great as that in the case cited. We think $2,000.00 is adequate.
Accordingly, for the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside, and it is now ordered, adjudged and decreed there be judgment herein in favor of plaintiff, Emitt Gosey, against the defendant, the Kansas City Southern Railroad Company, for the full sum of $3104.00, with five percent per annum interest thereon from judicial demand until paid, and for all costs.
It is further ordered, adjudged and decreed that the Old Republic Insurance Company have and recover judgment against both plaintiff and defendant, ordering that out of the award and judgment rendered herein in plaintiff’s favor against the defendant, the Old Republic Insurance Company be paid therefrom the sum of $751.00, with legal interest from judicial demand until paid.
Reversed and rendered.