**NEW AMSTERDAM CASUALTY CO. v. SOILEAU.**

**SOILEAU v. NEW AMSTERDAM CASUALTY CO.**

No. 12147.

Circuit Court of Appeals, Fifth Circuit.
May 7, 1948.

Rehearing Denied May 27, 1948.

Joseph A. Loret, of Baton Rouge, La., and Atlee P. Steckler, of Ville Platte, La., for appellant and cross-appellee.

Thos. W. Leigh, of Monroe, La., amicus curiae.

Edward Dubuisson, of Opelousas, La., for appellee and cross-appellant.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

This is a suit in damages brought under Act No. 55 of 1930, Statutes of Louisiana,[1] by the appellee against the appellant as insurer of Louis O. Campbell. Appellee, for the use and benefit of her minor son Joseph Soileau, seeks to recover for personal injuries suffered by him as the result of an accident which occurred while he was employed by Campbell. Campbell, the appellee, and her son Joseph are all residents and citizens of the Parish of Evangeline, La., and the accident which resulted in personal injury to Joseph occurred in that parish. Campbell was engaged in the trucking business. On the occasion in question, a 1942 one and a half ton Ford truck owned by him and equipped with a hoist was in process of being loaded with a drilling rig. The truck was in the charge of an employee of Campbell, and as the drilling rig was being loaded on the truck it fell and crushed Joseph's left foot, necessitating amputation of the foot. The complaint charged that Joseph had been employed by Campbell without appellee's consent and contrary to Act No. 301 of 1908, as amended by Act No. 210 of 1944, of the Legislature of Louisiana, which prohibits the employment in such work of children of Joseph's age, and that his employment was contrary to law and void. It was also alleged that Campbell's truck was insured against public liability by two policies issued by appellant, and that under the provisions of each, appellant's liability for bodily injury was $25,000. Judgment against appellant was prayed for in the sum of $50,000.

One of the policies issued by appellant provided that it would *not* apply "to bodily injury or death of an employee of the insured while engaged in the business of the insured," and the other provided: "This policy does *not* apply * * * under coverage (A) and (C) to bodily injury or death of any employee of the insured while engaged in the employment, other

---

[1] While the policies issued by the appellant contained a provision that no action shall lie against the company until the amount of the insured's obligation to pay shall have been finally determined, either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company, such stipulation is without legal effect, as Act No. 55 of 1930 was written into and became a part of the policies issued by the insurer in the State of Louisiana.

than domestic, of the insured, or while engaged in the operation, maintenance, or repair of the automobile."

The case was tried to a jury and resulted in a verdict against appellant in the sum of $15,000. From the judgment entered upon the verdict, appellant appeals. Appellant contends (1) that the State of Louisiana, in passing Act No. 55 of 1930 permitting the insurer of an insured to be sued directly by an injured person could not thereby confer jurisdiction on the federal court where the actual controversy is between citizens of the same State; (2) that the provisions of the policies did not apply for the reason that both exempted an employee of the insured; (3) that the violation of Act No. 301 of 1908, as amended by Act No. 210 of 1944, was not the proximate cause of the accident, hence, of itself, it created no liability for damages resulting from the accident; and (4) that the minor was guilty of contributory negligence in permitting his foot to be beneath the suspended rig.

Act No. 55 of 1930 La. was passed as an amendment to Act No. 253 of 1918. Both acts were passed to grant to persons injured or damaged by motor vehicles covered by insurance against public liability a right of action against the insurer company. In speaking of the two acts, the Supreme Court of Louisiana, in Miller v. Commercial Standard Insurance Co., 199 La. 515, 6 So.2d 646, 647, said: "Act No. 55 of 1930 granted to persons injured or damaged by a motor vehicle covered by insurance against liability *a privilege which they did not theretofore have.* It gave to them 'a right of direct action against the insurer company' alone, to recover such damages as they may have sustained by the fault of the insured. Under Act No. 253 of 1918, they had no 'right of direct action' against the insurer *except* in cases where the insured was insolvent or bankrupt. But, under Act No. 55 of 1930, which amended the act of 1918, the injured person or his heirs may in *all* cases maintain a direct action against the insurer, under the terms and limits of the policy." (Emphasis ours.)

In an earlier case which had to do with Act No. 253 of 1918, the same court said: "* * * while the policy was written primarily to indemnify Richard for loss for accidental injury caused by him, yet, in obedience to Act No. 253 of 1918, the policy contains a clause, * * * granting an action to the injured person or his heirs against the company, under the terms of the policy, for an amount, not exceeding the limits of the policy, in the event of the insolvency or bankruptcy of the insured. This makes the policy, under the conditions named, *inure to the benefit of the injured party,* and makes it, in effect, one of accident insurance in favor of the person injured, when the accident is caused by the insolvent or bankrupt." Lawrason v. Owners' Automobile Ins. Co. of New Orleans, 172 La. 1075, 136 So. 57, 58, 77 A.L. R. 1412. (Emphasis ours.)

Act No. 253 of 1918 is similar in its provisions to Section 109 of the Insurance Law of New York, Consol.Laws, c. 28, Laws 1918 c. 182. The New York act came under consideration of the Supreme Court of the United States in Merchants Mutual Automobile Liability Ins. Co. v. Smart, 267 U.S. 126, 45 S.Ct. 320, 321, 69 L.Ed. 538. With respect to the New York statute that Court said: "* * * Having in mind the sense of immunity of the owner protected by the insurance and the possible danger of a less degree of care due to that immunity, it would seem to be a reasonable provision by the state in the interest of the public, whose lives and limbs are exposed, to require that the owner in the contract indemnifying him against any recovery from him should stipulate with the insurance company *that the indemnity by which he saves himself should certainly inure to the benefit of the person who thereafter is injured.* Section 109 does not go quite so far. *It provides that the subrogation* shall take place only when the insured proves insolvent or bankrupt, and leaves the injured person to pursue his judgment against the insured if solvent without reliance on the policy." (Emphasis added.)

The 1930 Act is not wholly procedural, for it confers also a substantive

right upon the injured party in the direct action granted such party against the insurer. Nor is the act procedural in the sense that the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, are procedural; it deals neither with practice nor procedure in civil actions. If under it suit is instituted in a State court, State practice and procedure govern; if instituted in a federal court, federal practice and procedure become applicable. Equally without merit is the contention that the court below was without jurisdiction, since the actual controversy was one between the insured and the injured party, both citizens of Louisiana. The Act of 1918, as amended by the Act of 1930, makes the indemnity in favor of the insured *inure to the benefit of the person who thereafter is injured by the negligence* of the insured. Lawrason v. Owners' Automobile Ins. Co. of New Orleans, supra; and Merchants Mutual Automobile Liability Ins. Co. v. Smart, supra. In other words, *it subrogates* the injured person to all the rights of the insured within the terms and limits of the policy. Where the asserted right of action arises by subrogation and not by assignment, the subrogated party may sue on such right in a federal court if there is diversity of citizenship between him and the defendant, though the original debtor and the defendant are citizens of the same State. City of New Orleans v. Whitney, 138 U.S. 595, 11 S.Ct. 428, 34 L.Ed. 1102; 2 Hughes, Federal Practice, § 894, p. 148.

■ Act No. 301 of 1908 La., as amended by Act No. 210 of 1944, prohibits a minor under the age of sixteen being employed, permitted, or suffered to work in and about or in connection with power-driven machinery, and prohibits a minor under eighteen years of age being employed, permitted, or suffered to work,

"(10) As driver of any motor vehicle used for commercial or industrial purposes or as a helper thereon, the term 'helper' being defined as any person other than the driver whose work in connection with the transportation or delivery of goods or commodities necessitates or requires riding in or on a motor vehicle;

"(11) In the operation of * * * hoisting machines."

The Legislature of Louisiana in passing these acts clearly had in mind the protection of children from accidents resulting from working in the prohibited fields. Cropper v. Mills, La.App., 27 So.2d 764. In employing Joseph Soileau to do work on or about the truck, Campbell, the insured, clearly violated the act. Joseph was some five months over fifteen years of age and was employed without the knowledge or consent of his mother, his only surviving parent. In such circumstances it may not be said that he was an employee of Campbell. That relation can arise only out of a contract express or implied. A fifteen-year-old boy is without capacity in general to enter into any express contract; and Act No. 301 of 1908, as amended by Act No. 210 of 1944, prevents the raising of a contract of employment by implication of law. Since Joseph was not an employee of Campbell, the contention that he was not covered by the policies is without merit. "The rule is well established that insurance contracts are generally to be construed against the insurer, and that a liberal interpretation of clauses therein exempting or limiting their liability is not permitted." Salomon v. Equitable Life Assurance Society of the U. S., 202 La. 1001, 13 So.2d 329, 331.

■ But, even though Joseph was not an employee of Campbell, there could be no liability under the policies unless negligence were shown. Violation of the statute in question is not necessarily negligence per se. But where, as here, the minor is injured in a performance of the very duties which the law forbade his being employed to perform, there is a direct causal connection between the prohibited hiring and the injury sustained, and there may be said to be negligence as a matter of law on the part of the employer. This being so, the insurance company is liable under its policies, and on that point the judgment below must be affirmed.

It follows that there is no need for us to discuss appellant's points concerning (1)

the allegation and lack of proof of specific negligence or (2) the question of the propriety of pleading res ipsa loquitur in addition to the specific plea or (3) the error of the trial court in charging on the plea of res ipsa loquitur.

■ Whether or not there was contributory negligence on the part of Joseph was a question of fact for the consideration of the jury. We find no fault with the judge's charge that in passing on that question the jury might consider the age of the minor.

■ The charge by the court that the ability of the defendant to pay could be considered by the jury, we think erroneous, but, in the circumstances of this case, we think it was harmless error. The Louisiana rule is clearly and correctly set forth in Hartman v. Aschaffenburg, La. App., 12 So.2d 282, 287. In that case the court said:

"Counsel for plaintiff has cited many authorities to the effect that the ability of a defendant to pay may be taken into consideration in assessing damages. [Citing authorities.] And he argues that since defendant admits that he has a good position, the amount awarded should be increased.

"But while this rule seems to have been established in this state, it may be availed of *only* for the purpose of protecting a defendant who is unable to pay from being deprived of everything that he may have; in other words, only for the protection of the poor defendant. It may not be used to increase the award merely because the defendant is in affluent circumstances. *This principle applies in mitigation and not in aggravation of damages.*" (Emphasis added.)

■ Under Louisiana law the ability of the defendant to pay should not be considered unless the defendant contends that his financial condition is such that he cannot pay the plaintiff adequate compensation for his injuries without serious consequences to himself. The defendant in this case raised no such question. However, the verdict in behalf of Joseph for the loss of his foot was in the sum of $15,000. The court correctly charged that in fixing the award the jury could consider the present purchasing power of the Dollar. Wyble v. Putfork, La.App., 141 So. 776; Hartman v. Aschaffenburg, supra. In two earlier cases the Supreme Court of Louisiana allowed $7500 for the loss of a foot, Cross v. Lee Lumber Co., 1912, 130 La. 66, 57 So. 631; Bell v. H. & S. R. Co., 1913, 132 La. 88, 60 So. 1029, 43 L.R.A.,N.S., 740. Considering the present inflated value of the dollar, the $15,-000 award was not out of line with these prior awards. The charge, therefore, that the jury might consider the defendant's ability to pay would not seem to have unfairly influenced the jury in fixing the award.

The court below allowed interest on the amount of the verdict in the judgment from the date of the entry of the verdict, apparently upon the authority of Louisiana & A. R. Co. v. Pratt, 5 Cir., 142 F.2d 847. By cross-appeal, appellee seeks to amend the judgment appealed from to provide therein that the legal interest shall run from date of judicial demand. The only federal rule with respect to interest is that provided for in U.S.Rev.Stat. § 966, 28 U.S.C.A. § 811. That statute reads: "Interest shall be allowed on all judgments in civil causes, recovered in a district court, and may be levied by the marshal under process of execution issued thereon, in all cases where, by the law of the State in which such court is held, interest may be levied under process of execution on judgments recovered in the courts of such State; and it shall be calculated from the date of the judgment, at such rate as is allowed by law on judgments recovered in the courts of such State."

Act No. 206 of 1916, Louisiana Statutes, provides:

" * * * that legal interest shall, hereafter, attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts in this State."

The federal statute has to do with interest on judgments while the Louisiana

772

statute has to do with interest on a claim arising ex delicto and reduced to judgment. As pointed out in Keen v. Mid-Continent Petroleum Co., D.C., 63 F.Supp. 120, at page 141, " * * * there is a distinction between interest on a claim before it is reduced to judgment and interest on a judgment as a judgment."

■ The 1916 Louisiana Act allowing interest from the date of judicial demand on all judgments sounding in damages ex delicto creates a substantive right. In Mass. Benefit Ass'n v. Miles, 137 U.S. 689, 11 S.Ct. 234, 235, 34 L.Ed. 834, with respect to the allowance of interest provided for in an act of the Legislature of Pennsylvania, the Supreme Court said:

"By an act of the Legislature of Pennsylvania, passed in 1859 [12 P.S. § 781], it is declared to 'be lawful for any party or parties in whose favor any verdict may be rendered for a specific sum of money to collect and receive interest upon such sum from the date of the verdict; and every general judgment entered upon such verdict, whether by a court of original jurisdiction or by the supreme court shall be deemed and held to be a judgment for the sum found by the verdict, with interest thereon from the date of such finding.' " * * * Section 966, while providing only for interest upon judgments, does not exclude the idea of a power in the several states to allow interest upon verdicts, and, where such allowance is expressly made by a state statute, we consider it a right given to a successful plaintiff * * *. The courts of the state and the federal courts sitting within the state should be in harmony upon this point."

It follows that if a State may allow interest from the date of the verdict, it may allow interest from the date of judicial demand. The Pratt case is not applicable here; the claim asserted there arose under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and was therefore governed by that act and not by the local law.

The judgment appealed from is amended to allow legal interest from judicial demand, and, as amended, it is affirmed.