**Joe W. COLLINS, as Committee for Travious Riddle Collins, Incompetent, Plaintiff-Appellant,**

v.

**AMERICAN AUTOMOBILE INSURANCE COMPANY OF ST. LOUIS, MISSOURI, Defendant-Appellee.**

**No. 141, Docket 23658.**

United States Court of Appeals Second Circuit.

Argued Dec. 12, 1955.

Decided Feb. 14, 1956.

Edward J. Behrens, New York City (Gay & Behrens, New York City, on the brief), for plaintiff-appellant.

C. J. Pernicone, New York City (Richard E. Joyce and John F. X. Finn, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

This is an action by the plaintiff, Collins, as a committee for Travious Riddle Collins, an incompetent, to recover damages for personal injuries sustained by his ward when struck on a street in New Orleans, La., by an automobile owned and operated by one Edward Duffy. The complaint further alleges that at the time of the accident Duffy was insured by a policy of liability insurance issued by the defendant and that this direct action against the insurer (to which Duffy is not a party) is based upon La.Rev.Stat. 22:655 (1950).[1]

---

1. The section in pertinent part reads as follows: " * * * The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and *in solido*. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provi-

This action was instituted in the court below on June 9, 1954. On October 4, 1954, the plaintiff brought suit against both Duffy and the insurer on the same claim in the United States District Court for the Eastern District of Louisiana, New Orleans, La., Division, for the purpose, as he now asserts, of preserving the claim against the bar of the statute of limitations in case of dismissal of the action in New York. This suit is still pending.

Both the incompetent and his committee are citizens of Virginia. Defendant is a citizen of Missouri, but is doing business in New York as well as Louisiana. The insurance policy was delivered to Duffy in Louisiana, of which state he is a resident and apparently a citizen.

Defendant insurer pleaded a number of affirmative defenses and later moved for dismissal on the grounds that the complaint failed to state a claim on which relief could be granted and that there was no jurisdiction of the subject matter. Hearings on the motions were adjourned pending decisions of the United States Supreme Court in Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59, and Watson v. Employers Liability Assur. Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74, both of which cases involved important questions of application of the Louisiana direct action statute. After these decisions were rendered defendant filed a supplemental affidavit dealing principally with the second action brought by plaintiff in Louisiana.

Judge Palmieri subsequently dismissed the complaint on grounds of *forum non conveniens*, buttressing his decision with the conclusions that the forum was remote from the place of the accident and from the witnesses and that the local trial calendar was crowded, and with several other considerations of policy based on Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. He further stressed that plaintiff could not be injured by the dismissal because he was still able to pursue his remedy in Louisiana. D.C.S.D.N.Y., 128 F.Supp. 228.

■■ The application of the doctrine of *forum non conveniens* by Judge Palmieri to dismiss the case was erroneous. The field of that doctrine is entirely occupied by 28 U.S.C. § 1404(a), enacted in 1948 subsequent to the decision of Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 501, 67 S.Ct. 839—the case relied upon by the judge. See Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (a case decided after the decision herein); Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 959, 93 L.Ed. 1207, 10 A.L.R.2d 921. If the forum is found to be inconvenient, the remedy now is transfer, not dismissal as formerly. The validity of this conclusion is, in effect, admitted by defendant, who now seeks to have us regard the action of the district court not as a dismissal, but as in substantive effect a transfer to Louisiana, where the second similar action is pending. We cannot, however, so view the order below. We think a litigant is entitled to have his duly brought case remain alive, avoiding new problems of jurisdiction, limitations, laches, and the like, whatever vicissitudes of transfer or consolidation thereafter with other actions may occur. Moreover, he should be confronted with a direct presentation of the statutory issue and the supporting material, rather than be faced with conjecture and supposition. On a remand this issue may be faced thus directly upon defendant's properly supported motion. We express no opinion on the mer-

sion forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state. As amended Acts 1950, No. 541, § 1."

its of such an issue, if arising hereafter, except to note that we have often questioned reliance upon the fact of locally congested dockets as a proper ground for an order of transfer. Court congestion is not local, and conditions below may be no worse than elsewhere, particularly in the light of the recent heroic and highly successful efforts of our district judges to meet their calendar problems. But beyond all this, we think it dangerous to suggest that a judge may deny entrance to his court to a litigant on the ground of his serious burdens; his understandable complaints should be directed elsewhere, as to executive and legislature.

■ But though we hold dismissal on grounds of *forum non conveniens* to be improper, we must also consider the more complex question whether the dismissal is to be sustained because no suit on the Louisiana direct action statute may be maintained in a federal district court sitting in New York.[2] Here our first problem is to determine whether, within the meaning of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and cases following it,[3] this in current semantics is a matter of "substance," to which state law applies, or a matter of "procedure," to which federal law is applicable. And decision must rest upon application of the test stated in Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, 160 A.L.R. 1231: "The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that

alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?"

We think the problem has been settled by Lumbermen's Mutual Casualty Co. v. Elbert, supra, 348 U.S. 48, 75 S.Ct. 151. In that case the Supreme Court sustained the jurisdiction of a United States District Court sitting in Louisiana in a case brought under the direct action statute here involved. One of the principal objections to jurisdiction raised there was the lack of diversity of citizenship between the plaintiff and the tort-feasor. But the Supreme Court followed the characterization of the Louisiana courts that the statute created a separate and distinct right of action against the insurer, and hence held that lack of diversity between tort-feasor and plaintiff was not material. Apart from the language of the opinion it is implicit in the result that the right created by the statute was regarded as substantial, for, were the matter only procedural, it would have been improper for the federal court to conform its practice thereto. To like effect is Watson v. Employers Liability Assur. Corp., supra, 348 U.S. 66, 75 S. Ct. 166. And see also New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128, certiorari denied 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376; and Bankers Indemnity Ins. Co. v. Green, 5 Cir., 181 F.2d 1.[4]

But this does not complete our inquiry; for, under prevailing precedents in diversity cases, we are admonished to find and apply the New York view of the

---

2. See, in general, Note, 31 Ind.L.J. 75.

3. See West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Cohen v. Beneficial Industrial Loan Corp., 337 U.

S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528; Bernhardt v. Polygraphic Co. of America, 76 S.Ct. 273; and cases cited in the text below.

4. Wells v. American Employers' Ins. Co., 5 Cir., 132 F.2d 316, denominating the Louisiana remedy procedural and nonenforceable in Texas, rests upon the issue of conflict of laws, next discussed in the text, and does not consider the direct Erie-Tompkins problem.

foreign law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Wells v. Simonds Abrasive Co., 345 U.S. 514, 73 S. Ct. 856, 97 L.Ed. 1211. This was not the original principle as exemplified in the Erie case itself; for there, as often pointed out, Justice Brandeis accepted the Pennsylvania law, as there found by the Court, and not the New York view of it, for application in the court below. And this further gloss has presented perhaps the most criticized feature of the developing Erie-Tompkins principle. For not only does it frustrate what those severe critics of the pre-Erie rule, Justices Holmes and Brandeis, thought a creative activity in the federal courts to make a proper choice among competing state laws, but it also leads to just that forum-shopping which was Erie's target and may yield to a litigant whose only merit is suing first the peculiar advantage of so wholly unique a law as was actually applied in the Griffin case.[5] Our present situation is illustrative. New York State's interest is obviously minimal. Yet the idea is that New York doctrines aimed to protect its local interests and advance its public policy shall be extended to prevent a court of the United States from according substantive justice as between a Virginia citizen and a Missouri corporation. We are not sure that a developing Erie doctrine, which properly aims to avoid discrimination in New York litigation by the accident of the federal forum, does now require us to deny justice to these suitors according to the prevailing substantive law if by chance it appears that the New York state courts would refuse a remedy.[6] So before turning directly to the New York precedents we shall note the fast growing general law of conflicts as to the enforceability of such direct action statutes as the one before us.

This question has, it is true, produced some divergence of judicial view. Thus in Lieberthal v. Glens Falls Indemnity Co. of Glens Falls, New York, 316 Mich. 37, 24 N.W.2d 547, the Supreme Court of Michigan declined to give effect in that state to a Wisconsin direct action statute [7] similar to the Louisiana statute here at issue. The Michigan court declined to characterize the Wisconsin statute as substantive or procedural, but grounded its decision upon the alleged affront to Michigan public policy as expressed in a statute specifically forbidding direct action against the insurer. But Chief Justice Butzel, for himself and two colleagues, filed a very persuasive dissent setting forth his contrary views as to public policy and further arguing that the direct action provision created a substantive vested right, transitory in nature and enforceable in Michigan.

Kertson v. Johnson, 185 Minn. 591, 242 N.W. 329, 85 A.L.R. 1, similarly holds that the Wisconsin statute creates a substantive right for purposes of the con-

---

5. See dissenting opinion of Jackson, J., in Wells v. Simonds Abrasive Co., 345 U.S. 514, 519, 73 S.Ct. 856, 97 L.Ed. 1211; Broh-Kahn, Uniformity Run Riot —Extensions of the Erie Case, 31 Ky.L.J. 99; Cook, The Federal Courts and the Conflict of Laws, 36 Ill.L.Rev. 493, reprinted in Cook, The Logical and Legal Bases of the Conflict of Laws, c. 5 (1942); Note, 67 Harv.L.Rev. 91, 150. For a more favorable view of the Klaxon rule, see Wolkin, Conflict of Laws in the Federal Courts: Thirteen Years of Erie R. Co. v. Tompkins, 3 Syracuse L.Rev. 47. For a pre-Klaxon comment, see 52 Harv.L.Rev. 1002.

6. See in general Broh-Kahn, Amendment by Decision—More on the Erie Case, 30 Ky.L.J. 3; Clark, State Law in the Federal Courts: The Brooding Omnipresence of Erie R. Co. v. Tompkins, 55 Yale L.J. 267, reprinted in Jurisprudence in Action 59, 102 (1953); Corbin, The Laws of the Several States, 50 Yale L.J. 762; Harnett & Thornton, Precedent in the *Eerie*-Tompkins Manner—A Decade in Retrospect, 24 N.Y.U.L.Rev. 770; Keeffe, Gilhooley, Bailey & Day, Weary Erie, 34 Corn.L.Q. 494; Note, 35 Corn.L.Q. 420.

7. Wis.Stat. § 85.93, construed in Kujawa v. American Indemnity Co., 245 Wis. 361, 14 N.W.2d 31, 151 A.L.R. 1133.

flict of laws. The Kertson case is cited with approval in Burkett v. Globe Indemnity Co., 182 Miss. 423, 181 So. 316, where the Supreme Court of Mississippi, employing its own analysis, held that the Louisiana statute here at issue created a substantive right enforceable in Mississippi. Later, the Mississippi court overruled this decision, McArthur v. Maryland Casualty Co., 184 Miss. 663, 186 So. 305, 120 A.L.R. 846, in an opinion from which the Chief Justice vigorously dissented. In the McArthur case the court, abandoning its own characterization of the Louisiana statute, rested its decision upon the characterization allegedly given the statute by the Louisiana courts. But Louisiana in differing contexts has denominated the statute both "procedural" and "substantive" (the latter characterization having been made principally in decisions subsequent to the McArthur case).[8] In any event, it is the general rule that the forum will make its own characterization of foreign law.[9] It is no doubt true that respect should be accorded the construction of a statute by the courts of the state whose legislature enacted it; this is a valuable device for avoiding the constitutional difficulties which might result from refusing to enforce as "procedural" a right regarded as "substantive" in another state.[10] But that is not the problem here, and we think we should rely for conflict of law purposes upon the characterization (purporting to conform to Louisiana decisions) given the statute by the Supreme Court. See Lumbermen's Mutual Casualty Co. v. Elbert, supra, 348 U.S. 48, 51, 75 S.Ct. 151, 154, wherein appears the following: "The Louisiana courts have characterized the statute as creating a separate and distinct cause of action against the insurer which an injured party may elect *in lieu* of his action against the tortfeasor. West v. Monroe Bakery, 217 La. 189, 46 So.2d 122; Jackson v. State Farm Mutual Automobile Ins. Co. [211 La. 19, 29 So.2d 177]." Cf. Wells v. American Employers' Ins. Co., 5 Cir., 132 F.2d 316.

This is not a mere matter of determination of proper parties to the action;[11] it is, as noted by the Supreme Court in the Lumbermen's Mutual Casualty Co. case, a matter of enforcement of a right of action against a designated defendant where no such right previously existed. Of course, more obfuscation than clarification is achieved through the undiscriminating use of the labels "procedural" and "substantive." The realities of the individual situation must govern. The purpose of the conflict of laws doctrine is to prevent substantial variation as a result of choice of forum in the rights and duties arising from a given legal situation. But some limitations must be placed upon the reference to foreign law in the interest of orderly administration of justice by the courts of the forum. In the instances where these limitations are imposed to promote practicality, convenience, and the integrity of local practice, local rules at the forum are

---

8. See West v. Monroe Bakery, 217 La. 189, 46 So.2d 122; Jackson v. State Farm Mutual Automobile Ins. Co., 211 La. 19, 29 So.2d 177. See also Note, 39 Va.L.Rev. 655; Robbins v. Short, La. App.1936, 165 So. 512; Stephenson v. List Laundry & Dry Cleaners, 182 La. 383, 162 So. 19. Cf. Belanger v. Great American Indemnity Co. of New York, 5 Cir., 188 F.2d 196.

Home Ins. Co. v. Highway Ins. Underwriters, 222 La. 540, 62 So.2d 828, cited by defendant, construes the statute as procedural and remedial in a decision upholding the right of the subrogee of the injured party to maintain a direct action against the tort-feasor's insurer. Clearly this is far afield from the conflict of laws.

9. Restatement, Conflict of Laws § 584 (1934).

10. See generally John Hancock Mutual Life Ins. Co. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106; Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178.

11. Restatement, Conflict of Laws § 588 (1934).

applied and denominated "procedure." [12] The Louisiana courts have made significant distinctions as to the defenses which may be raised between suits brought directly against the insurer and those brought against the tort-feasor. See Lumbermen's Mutual Casualty Co. v. Elbert, supra, 348 U.S. 48, 51, 75 S.Ct. 151, and cases cited therein. It therefore appears that the direct action statute does more than merely shorten the legal process; it creates what is substantially a new right of action, and failure to apply it in the Southern District of New York will defeat that uniform enforcement of vested rights which is the purpose of the law of conflicts.[13] On the other hand, we can perceive no reason why the application of the statute in the district court here should result in any interference with the orderly administration of justice.

■ But if we are firmly bound to apply the conflict of laws doctrines of New York to this case, we reach the same conclusion as that already indicated by our own analysis. New York follows the usual rule that the law of the forum determines what is a matter of procedure and what of substance. Murray v. New York, O. & W. R. Co., 242 App.Div. 374, 275 N.Y.S. 10. Although no New York case has yet had occasion to characterize the direct action statute of a sister state, there is every reason to believe that such a statute would be denominated "substantive" and enforced. New York has permitted the law of a foreign state to determine the proper party to bring an action for wrongful death, even though the law of the forum prescribed different plaintiffs. See Wooden v. Western N. Y. & P. R. Co., 126 N.Y. 10, 16, 26 N.E. 1050, 1051, 13 L.R.A. 458, wherein the court said: "But it must not be forgotten that the cause of action sued upon is the cause of action given by the lex loci, and vindicated here and in our tribunals upon principles of comity. [Leonard v. Columbia Steam Navigation Company] 84 N.Y. [48] 53 [38 Am.Rep. 491], supra. That cause of action is given to the widow in her own right and as trustee for the children, and we open our courts to enforce it in favor of the party who has it, and not to establish a cause of action under our statute which never in fact arose."

See also Wikoff v. Hirschel, 258 N.Y. 28, 179 N.E. 249; Baldwin v. Powell, 294 N.Y. 130, 61 N.E.2d 412.

■ Of course New York adheres to the general rule that the law of the forum determines the capacity of the parties to sue and be sued. Mertz v. Mertz, 271 N.Y. 466, 3 N.E.2d 597, 108 A.L.R. 1120. In the Mertz case the court refused to allow a wife to bring an action against her husband for negligently inflicted personal injuries suffered in Connecticut, both parties being residents of New York. Connecticut law permitted such a suit, but New York law did not. This decision, however, was strongly influenced by the asserted New York policy of preserving domestic tranquillity by barring this kind of litigation. And New York had a strong interest in the well-being of the marriage of these two of its own residents.

■ In any event, although the proper parties and the capacity of parties to sue and be sued may in general be deemed a procedural matter, the designation of the party defendant in the direct action statute, by analogy to the death action cases, must be regarded as part and parcel of the new substantive right created thereby. Cf. W. B. Dunn Co. v. Corwin, 258 App.Div. 609, 17 N.Y.S.2d 577; National City Bank of New York v. Beebe, Sup., 131 N.Y.S.2d 67, affirmed without opinion 285 App.Div. 874, 139 N.Y.S.2d 238, dismissed 308 N.Y. 960, 127 N.E.2d 100.

12. Restatement, Conflict of Laws c. 12, Introductory Note (Procedure), 699–701 (1934).

13. See Beach, Uniform Interstate Enforcement of Vested Rights, 27 Yale L.J. 656.

It is further contended that, even though the right may be substantive, it would be violative of New York policy to enforce it. This contention is based upon the state policy which forbids knowledge of a tort-feasor's liability insurance from being brought to the attention of the jury. Simpson v. Foundation Co., 201 N.Y. 479, 95 N.E. 10; Hopper v. Comfort Coal-Lumber Co., 276 App.Div. 1014, 95 N.Y.S.2d 318; Brown v. Walter, 2 Cir., 62 F.2d 798, 800. Based on the liberal view usually taken by the courts of New York in not declining to enforce foreign rights because of their alleged variation from their New York analogues, we cannot say that a state court would refuse to entertain a direct action against an insurer merely because this would bring the existence of insurance to the attention of the jury in a case apparently unconnected with New York or its citizens. See Loucks v. Standard Oil Co. of New York, 224 N. Y. 99, 111, 120 N.E. 198, 201, for the classic statement of New York's attitude in this regard, where Cardozo, J., said: "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. * * * [The courts] do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."

Furthermore, in several recent cases New York in its own courts has permitted defendant tort-feasors to bring in their insurers as third-party defendants pursuant to § 193–a of the N. Y. Civil Practice Act. See Brooklyn Yarn Dye Co. v. Empire State Warehouses Corp., 276 App.Div. 611, 96 N.Y.S.2d 738; Adelman Mfg. Corp. v. New York Wood Finisher's Supply Co., 277 App.Div. 1117, 100 N.Y.S.2d 867; Rosenberg v. Cassidy, Sup., 135 N.Y.S.2d 87. Cf. Gleason v. Sailer, 203 Misc. 227, 116 N.Y.S.2d 409. See also N. Y. Workmen's Compensation Law, McK.Consol.Laws, c. 67, § 54, which allows the compensation insurer to be made a party to the original application for compensation.

Lieberthal v. Glens Falls Indemnity Co. of Glens Falls, New York, supra, 316 Mich. 37, 24 N.W.2d 547, decided on public policy grounds similar to those urged here, is quite distinguishable, since the majority opinion there turned primarily upon a Michigan statute which specifically forbade direct action against the insurer. In view of New York's enlightened attitude toward the employment of local policy as a bar to foreign claims and the unsettled state of New York law with regard to insurance companies as third-party defendants, the application of the Louisiana statute is not prohibited by New York public policy. If it were so barred in fact, a real problem of Full Faith and Credit might be raised. See Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212; First National Bank of Chicago v. United Air Lines, 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441.

■ We come now at length to the ultimate point raised by defendant, namely, as to the venue of the action and whether the statute by virtue of its provision for direct action "in the parish where the accident or injury occurred or in the parish where the insured has his domicile * * * *" is not by its own terms applicable only to actions brought within the state of Louisiana. The more reasonable view, however, appears to be that these are but requirements of place of suit which do not carry beyond the limits of a Louisiana forum. This is the logical outcome of Lumbermen's Mutual Casualty Co. v. Elbert, supra, 348 U.S. 48, 75 S.Ct. 151, giving substantive value to the statute to permit suit in the federal court, and thus overriding the local venue requirements. See also New Amsterdam Casualty Co. v. Soileau, supra, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128, certiorari denied 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376; Tennessee Coal, Iron & R. Co. v. George, 233 U.S. 354, 34

S.Ct. 587, 58 L.Ed. 997, L.R.A.1916D, 685. In effect each argument deduced above for the substantive value given this statute by the Supreme Court, and by us following its lead, is an argument against according a controlling and prohibiting effect to these directions as to the place of enforcement of the remedy. Hence our conclusion must be that the dismissal was improper.

Reversed and remanded for further proceedings in accordance with this opinion.