# United States Court of Appeals for the Federal Circuit

Miscellaneous Docket No. 901

IN RE GENENTECH, INC. and BIOGEN IDEC INC.,

Petitioners.

Charles Verhoeven, Quinn Emanuel Urquhart Oliver & Hedges, LLP, of San Francisco, California, for petitioner Genentech, Inc. With him on the petition were Victoria F. Maroulis and Melissa J. Baily. Of counsel was Gabriel S. Gross.

Donald R. Ware, Foley Hoag LLP, of Boston, Massachusetts, for petitioner Biogen Idec, Inc. With him on the petition were Claire Laporte and Jeremy A. Younkin.

Paul H. Berghoff, McDonnell Boehnen Hulbert & Berghoff LLP, of Chicago, Illinois, for respondent Sanofi-Aventis Deutschland GmbH. With him on the response were Joshua R. Rich and Jeffrey A. Steck.

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas

Judge Ron Clark

# United States Court of Appeals for the Federal Circuit

Miscellaneous Docket No. 901

IN RE GENENTECH, INC. and BIOGEN IDEC INC.,

Petitioners.

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in case no. 9:08-CV-00203-RC, Judge Ron Clark.

Before MICHEL, Chief Judge, FRIEDMAN and LINN, Circuit Judges.

LINN, Circuit Judge.

O R D E R

Genentech, Inc. ("Genentech") and Biogen Idec Inc. ("Biogen") petition for a writ of mandamus to direct the United States District Court for the Eastern District of Texas to vacate its March 19, 2009 order denying the petitioners' motion to transfer venue, and to direct that court to transfer the case to the United States District Court for the Northern District of California. Sanofi-Aventis Deutschland GmbH ("Sanofi") opposes. The petitioners move for leave to reply.

## I. BACKGROUND

The petitioners, companies which are headquartered in San Francisco, California, and San Diego, California, respectively, are defendants in a patent infringement suit brought by the German company, Sanofi. Sanofi brought the suit in the District Court for the Eastern District of Texas, a venue which indisputably has no connection to any of the witnesses or evidence relevant to the cause of action. On the same day, the petitioners filed a related declaratory judgment action in the Northern District of California, seeking a declaration of invalidity and noninfringement of Sanofi's patents.

The petitioners filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer the Texas case to the Northern District of California. The petitioners argued that at least ten potential material witnesses, including two of the patent prosecution attorneys, reside in the Northern District, and at least four additional potential witnesses are residents of California. The petitioners further argued that all of their documents relating to the development and marketing of the accused infringing products were either in the proposed transferee jurisdiction or in San Diego, California.

Sanofi opposed transfer, contending that the Eastern District of Texas was the proper venue. Sanofi argued that the Eastern District of Texas was centrally located between the parties and would be more convenient for the six inventors who reside in Europe, a prior art author who resides in Iowa who could be a potential witness, and the remaining four prosecuting patent attorneys who reside on the U.S. East Coast. Sanofi also argued that a denial of transfer could prevent a waste of judicial resources by avoiding the need for the Northern District of California to decide whether it had personal jurisdiction over Sanofi with regard to the petitioners' declaratory judgment action.

On March 19, 2009, the Eastern District of Texas denied petitioners' request to transfer. Regarding the convenience of the witnesses, the court noted that although several witnesses resided in the Northern District of California, none were identified by the petitioners as "key witnesses." The court also emphasized Texas's central physical location to the foreign and U.S. witnesses and parties. Finally, the court stated that the Northern District of California's possible lack of personal jurisdiction over Sanofi, and Genentech's previous appearance as a plaintiff in the Eastern District of Texas, counted significantly against transfer. The petitioners ask us for a writ of mandamus directing

the Eastern District of Texas to vacate its order and transfer the case pursuant to 28 U.S.C. § 1404(a).

## II. DISCUSSION

The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. In re Calmar, Inc., 854 F.2d 461, 464 (Fed. Cir. 1998). A party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable," Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980). The use of mandamus to correct a patently erroneous denial of transfer pursuant to § 1404(a) has been approved under the rulings of the Fifth Circuit in appropriate circumstances. See In re TS Tech USA Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2008) (issuing mandamus to transfer patent case out of the Eastern District of Texas where all identified witnesses and evidence were located in alternative venue); In re Volkswagen of Am., Inc., 545 F.3d 304 (5th Cir. 2008) (en banc) (same).

### A. Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

The basic principles governing transfer of venue under the law of the Fifth Circuit are well settled and are not in dispute here. Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. § 1404(a). A motion to transfer venue should be granted upon a showing that the transferee venue "is clearly more convenient" than the venue chosen by the plaintiff. Volkswagen, 545 F.3d at 315.

In assessing whether a defendant has met its burden of demonstrating the need to transfer, the Fifth Circuit applies the "public" and "private" factors for determining

Misc. 901                                                    3

forum non conveniens. Volkswagen, 545 F.3d at 314 n.9. As we noted in TS Tech, the private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive." 551 F.3d at 1319 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." TS Tech, 551 F.3d at 1319 (quoting Volkswagen, 545 F.3d at 315) (internal quotation marks omitted).

## B. Application of the Factors

In applying these factors, the district court stated that despite the presence of a substantial number of witnesses in the transferee venue and no witness in Texas, the cost of attendance for witnesses only slightly favored transfer. The court emphasized that the petitioners had not identified "key witnesses" within the transferee venue. The court further stated that the central location of the Eastern District of Texas was more convenient for the European witnesses and Sanofi as well as the identified witnesses in Iowa and the East Coast. Because only some of the witnesses identified by the petitioners reside within the Northern District of California, the court also stated that the availability of compulsory process factor weighed only slightly in favor of transfer. Applying the central location rationale, the court additionally stated that the relative ease of access to sources of proof factor was neutral, noting that although some physical documents may be housed within the Northern District of California, other documents

were housed outside of the venue, including the patent prosecution documents, which could be more easily transported from the East Coast to Texas.

In assessing the "practical problems" factor, the court weighed significantly against transfer (1) that waste of judicial economy could be prevented by avoiding the uncertainty of whether the Northern District of California had personal jurisdiction over Sanofi with regard to the declaratory judgment action, and (2) that Genentech had previously filed a lawsuit in the Eastern District of Texas. The court also weighed against transfer the "court congestion" factor because it believed that the case could reach disposition quicker in the Eastern District of Texas. Finally, regarding the local interest factor, the court stated that this factor weighed only slightly in favor of transfer because, although Genentech had an interest in having this case tried where it conducted much of its research and development, the residents of the Eastern District of Texas also had an interest in the outcome of this case because the allegedly infringing products were sold within the district.

The petitioners take issue with the application of these factors. We note that there is no dispute between the parties that this case could have been brought by Sanofi in the Northern District of California. There is also no dispute between the parties regarding the district court's assessment of the familiarity of the forum factor and conflict of laws factor.

### i. Convenience of the Witnesses and Parties

We start with an important factor, the convenience for and cost of attendance of witnesses. See generally Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in transfer analysis"). In Volkswagen, the Fifth Circuit noted that "[a]dditional distance [from home] means additional travel time; additional travel time

increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." 545 F.3d at 317 (quotation marks omitted). Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established the "100-mile" rule, which requires that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." Id. (quotation marks omitted).

The petitioners identified at least ten witnesses within the Northern District of California, including at least three non-party witnesses who had knowledge of material facts relevant to the case. Two of the identified witnesses within the transferee venue were attorneys responsible for the prosecution of some of the patents-in-suit. The other witnesses within the venue had knowledge of the development and/or manufacture of the accused infringing products. The petitioners also identified at least four additional witnesses that had knowledge of material facts relevant to the case outside of the proposed alternative venue but within California, including at least three non-party witnesses. Although no witness resides in the Eastern District of Texas, the district court stated that this factor only "slightly" favored transfer.

The court gave four reasons why the Northern District of California was not clearly more convenient for the witnesses. First, the court stated that the petitioners had failed to identify any "key witnesses" within the transferee venue. Second, the court asserted that the six inventors traveling from Europe and Switzerland would be more inconvenienced in having to testify in California than Texas. Third, the court stated that Texas was more centrally located for the European witnesses as well as a potential

witness regarding prior art from Iowa and the remaining patent prosecution attorneys who reside on the East Coast. Finally, the court cited several of its recent orders for the proposition that this factor should not weigh in favor of transfer unless transfer would be convenient for all the witnesses.

Regarding the court's assessment that the petitioners failed to identify any "key witnesses" within the venue, the petitioners were held to a higher standard than required by the law. A district court should assess the relevance and materiality of the information the witness may provide. Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary. See Volkswagen, 545 F.3d at 317 n.12 (rejecting argument that defendants seeking transfer were required to submit affidavit evidence indicating what specific testimony they might offer and why such testimony is relevant or important). It is clear from the parties' filings below that inequitable conduct, infringement, and invalidity might be issues at trial. The petitioners have identified witnesses relevant to those issues, and the identification of those witnesses weighs in favor of transfer. It was not necessary for the district court to evaluate the significance of the identified witnesses' testimony.

The district court also emphasized that the Eastern District of Texas was more convenient for the six inventors and other potential witnesses from Germany and Switzerland. Under the "100-mile" rule generally, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. However, the "100-mile" rule should not be rigidly applied such that it creates the result presented here. The witnesses from Europe will be required to travel a significant distance no matter where they testify. In contrast to the foreign witnesses, there are a substantial number of witnesses residing within the transferee venue who would be

Misc. 901                                         7

unnecessarily inconvenienced by having to travel away from home to testify in the Eastern District of Texas. The significant weight given to the inconvenience of the European witnesses is in direct conflict with the more appropriate approach of several other district court decisions. See Neil Bros., 425 F. Supp. 2d at 330 (noting that it is comparatively only slightly less convenient to travel from the United Kingdom to New York than it is to travel from the United Kingdom to Tennessee); Bionx Implants, Inc. v. Biomet, Inc., No. 99 Civ. 740, 1999 WL 342306, at *3 (S.D.N.Y. 1999) (stating that witness traveling from Finland were no more inconvenienced by having to travel to Indiana than they would be traveling to New York); accord Centro Group, S.p.A. v. OroAmerica, Inc., 822 F. Supp. 1058, 1061-62 (S.D.N.Y. 1993) (European plaintiff was no more inconvenienced by litigating in California than in New York); Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 484 (D.N.J. 1993) (plaintiff's witnesses from Japan were no more inconvenienced by testifying in Minnesota than in New York).

The district court also relied on the Eastern District of Texas's centralized location regarding the additional identified potential witnesses in Iowa and the East Coast to warrant denial of transfer. The only relevant citation provided by Sanofi in support of the district court's central locality approach is United States v. Binder, 794 F.2d 1195 (7th Cir. 1986). In Binder, the district court was asked to transfer venue from Illinois to California. Of the 86 witnesses identified by the parties, 43 resided in California or a nearby state, 17 resided in Illinois, and 19 resided in New York, New Jersey, Florida, or England. In deciding that the defendant had not met its burden to require transfer, the court of appeals noted that "the widely scattered residences of the other witnesses, many of whom lived on or near the east coast, favored a central location for trial like Illinois rather than a far western location like California." Id. at 1200.

The differences between this case and Binder are significant. In Binder, 43 witnesses resided in the proposed transferee venue and 19 witnesses were residents of the plaintiff's chosen venue. The court noted "[a]lthough a substantial number of witnesses were from California, a substantial number of witnesses were also from Illinois." Id. In the present case, it is undisputed that no identified witness is a resident of Texas, let alone a resident of the Eastern District of Texas. Thus, the district court improperly used its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue.

The district court stated that this factor should only favor transfer if it will be more convenient for all of the witnesses. See Sanofi-Aventis Deutschland GmbH. v. Genentech, Inc., No. 9:08-CV-203, slip op. at 12 (E.D. Tex. Mar. 19, 2009) ("In TS Tech, the Federal Circuit found that this factor weighed in favor of transfer to a Defendant's home district where all of the witnesses were located in or around that district. At the same time, this factor can be neutral if the transferee district is not convenient for all of the witnesses." (citation omitted)). We cannot agree with the district court's rigid assessment. Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer.

Concerning the convenience of the parties, as we noted above, Genentech is headquartered within the Northern District of California. Biogen is headquartered in San Diego, California and would have to travel approximately half the distance to attend trial in Northern District of California than in the Eastern District of Texas. Sanofi is a German corporation that will be traveling a great distance no matter which venue the case is tried in and will be only slightly more inconvenienced by the case being tried in

Misc. 901                                              9

California than in Texas. Thus, the parties' convenience factor favored transfer, and not only slightly.

### ii. Availability of Compulsory Process

Pursuant to Rule 45(b)(2)(C) of the Federal Rules of Civil Procedure, a district court may compel attendance through the issuance of a subpoena at any place within the district of the court by which it is issued or at any place within 100 miles of where the deposition, trial, or hearing is being held. As noted above, there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.

### iii. Access to Evidence

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." Neil Bros. Ltd., 425 F. Supp. 2d at 330 (quotation marks omitted). Here, Genentech informed the district court that all of its corporate documents relating to the development, manufacturing, and marketing of eight of the nine accused infringing products are housed in its headquarters, which is in the transferee venue. Biogen informed the district court that all of its relevant materials relating to the ninth allegedly infringing product are housed at its corporate headquarters in San Diego, California.

The district court, however, stated that this factor was neutral. Although no evidence is housed within the state of Texas, the court stated that it would be easier for Sanofi to transport its documents from Europe to Texas. The court also noted that the prosecution history documents were maintained in the offices of a Washington, D.C. law

Misc. 901 10

firm that prosecuted the patents and that it would be easier to transport those documents to Texas than California. In addition, the district court speculated that although the petitioners identified all of its evidence in California, there could be evidence in existence in some other offices around the country. Finally, the district court minimized the inconvenience of requiring the petitioners to transport their documents by noting that "[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission." Sanofi-Aventis, slip op. at 11.

Sanofi argues that the district court's rationale sufficiently justified finding this factor to be neutral. We disagree and conclude that the district court clearly erred. Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred if the case were to proceed in the Northern District of California. Furthermore, because the documents housed in Europe and Washington, D.C. will need to be transported in any event, it is only slightly more inconvenient or costly to require the transportation of those materials to California than Texas. Thus, this factor weighs in favor of transfer. Finally, we note that the court's antiquated era argument was essentially rejected in Volkswagen because it would render this factor superfluous. 545 F.3d at 316.

*iv.  Practical Problems*

In its order, the District Court for the Eastern District of Texas cited two issues regarding the practicality of trying this case in the Eastern District of Texas instead of the Northern District of California. One of the issues the court found to weigh significantly against transfer was that Genentech had previously chosen to file a different suit in the Eastern District of Texas. The court reasoned that "Genentech

cannot avail itself of the Eastern District's courts when it suits them, only to complain little more than two years later that the Eastern District is an inconvenient venue in a subsequent suit." Sanofi-Aventis, slip op. at 15-16.

We agree with the petitioners that the district court's consideration of the previous case was clear error in this case. The Supreme Court has long held that § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The court does not suggest that Genentech's previous lawsuit involved the same parties, witnesses, evidence, and facts. Thus, the court clearly erred in finding Genentech's prior suit weighed against transfer.

The court also stated that the possibility of the Northern District of California lacking jurisdiction over Sanofi was a "critical" problem, weighing heavily against transfer. We again cannot agree that this issue weighs heavily against transfer and conclude that the court clearly erred. There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint. See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960) (power of district court to transfer case under § 1404(a) depends on whether the transferee district was one in which the action "might have been brought" by the plaintiff); see also Murray v. Scott, 176 F. Supp. 2d 1249, 1255 (M.D. Ala. 2001) ("The minimum-contacts concerns inhere when a party is haled into court without its consent upon pain of a default judgment. These concerns are not present when a plaintiff is forced to litigate his case in another forum."). To the extent that the district court cases cited by the district court might suggest otherwise, we are not persuaded.

### v. Court Congestion

In its order, the district court found that administrative difficulties caused by court congestion weighed against transfer. In explaining this factor, the court cited the parties' opposing statistics regarding the rate of disposition in the two venues. The court stated:

> Genentech suggests that the most recent Federal Judicial Caseload Statistics indicate that cases in the Northern District of California reach disposition more quickly than cases in the Eastern District of Texas – 9.7 months from filing to disposition in the Eastern District as opposed to 7.4 months in the Northern District. While this assertion is true when all cases are factored in, the disposition time in cases which actually go to trial is lower in the Eastern District – 18.4 months – than in the Northern District – 25.5 months. Sanofi also points to a 2008 patent litigation study, which found that in the twenty most active patent districts in the country, the fifth-ranked Eastern District had a much faster median time-to-trial interval – 1.79 years – than the sixteenth-ranked Northern District – 2.87 years.

Sanofi-Aventis, slip op. at 16.

Citing the same statistics, the petitioners argue that the district court erred in relying on this factor to disfavor transfer. The petitioners also note that "[b]ecause only 2 percent of federal civil actions between 2003 and 2007 were tried, however, the district court's undue emphasis on trials rather than dispositions was inappropriate." The petitioners further contend that "[e]ven if the district court's analysis were accepted, the time to trial in the Eastern District of Texas cannot outweigh all of the other factors favoring transfer. If it could, transfer would be permitted only to the latest 'rocket docket' district."

To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor. See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its

Misc. 901                                    13

less crowded docket."). We do not disturb the district court's suggestion that it could dispose of the case more quickly than if the case was transferred to the Northern District of California. We note that this factor appears to be the most speculative, see Collins v. Am. Auto. Ins. Co., 230 F.2d 416, 419 (2d Cir. 1956), and case-disposition statistics may not always tell the whole story. Without attempting to predict how this case would be resolved and which court might resolve it more quickly, we merely note that when, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.

### vi. Local Interest

The petitioners also argue that the district court failed to adequately consider the Northern District of California's interest in having this case tried within the venue. We note that even if this factor only "slightly" favors transfer, as the district court indicated, it nevertheless favors transfer along with several other relevant factors.

### C. Right to Mandamus Relief

A court may deny a petition for mandamus "[i]f the facts and circumstances are rationally capable of providing reasons for what the district court has done." Volkswagen, 545 F.3d at 317 n.7 (internal quotation marks omitted); see also In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985) (noting that "if a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus"). Nevertheless, mandamus relief in § 1404(a) cases is permitted when the petitioner is able to demonstrate that the denial of transfer was a "clear" abuse of discretion such that refusing transfer produced a "patently erroneous result." Volkswagen, 545 F.3d at 310.

As explained above, there are a substantial number of witnesses with material and relevant information residing in either the transferee venue or the state of California who will be unnecessarily inconvenienced in having to travel to Texas to testify. In addition, two of the three parties are headquartered in the transferee venue or San Diego, California. Thus, transfer would reduce significantly any transportation of documents relating to the accused products. In addition, because a substantial number of witnesses reside within the venue, the Northern District of California will have the authority to compel these witnesses to appear at trial, if needed.

There are no witnesses or parties within Texas. Moreover, there are no relevant documents there. Although a number of witnesses will be traveling from Europe, Iowa, and the East Coast, these witnesses would have to travel a significant distance in any event and would be only slightly more inconvenienced by having to travel to California. Thus, the convenience to the witnesses and parties, availability of compulsory attendance and access to evidence factors all weigh significantly in favor of transfer. In addition, as the district court noted, the local interest factor here also weighs in favor of transfer.

To the extent that the court congestion factor and the issue of uncertainty of Sanofi's personal jurisdiction in the separate action can weigh against transfer, there is simply no rational argument that, in light of the witnesses, parties, evidence, compulsory attendance and local interest, the clearly more convenient venue is not the Northern District of California. In denying transfer, the district court clearly abused its discretion and produced a patently erroneous result. The district court (1) improperly applied the "100-mile" rule; (2) improperly substituted its own central proximity for a measure of the convenience of the witnesses and parties, and documents; (3) rigidly applied the law to

prevent transfer to the more convenient forum; (4) glossed over the compulsory process factor; and (5) erroneously weighed two essentially irrelevant considerations.

The petitioners have also demonstrated that they have no other means of obtaining their request for relief. As we noted in TS Tech, "it is clear under Fifth Circuit law that a party seeking mandamus for a denial of transfer clearly meets the 'no other means' requirement." 551 F.3d at 1322. Moreover, a petitioner would not have an adequate remedy for an improper failure to transfer the case by way of an appeal from an adverse final judgment because the petitioner would not be able to show that it would have won the case had it been litigated in the other venue. Volkswagen, 545 F.3d at 319.

## III. CONCLUSION

Because the petitioners have met their burden of establishing that the district court clearly abused its discretion in denying transfer of venue to the Northern District of California and because we determine that mandamus relief is appropriate in this case, we grant the petition for a writ of mandamus.

Accordingly,

IT IS ORDERED THAT:

(1)     The petitioners' motion for leave to reply is granted.

(2)     The petition for a writ of mandamus is granted.

FOR THE COURT

<u>    May 22, 2009    </u>                    <u>    /s/ Jan Horbaly                </u>
            Date                                         Jan Horbaly
                                                         Clerk